UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| LLOYD CURTIS JOHNSON, <br><br> Plaintiff, <br><br> vs. <br><br> ACUITY MUTUAL INSURANCE COMPANY, <br><br> Defendant. | 5:18-CV-05076-JLV <br><br> REPORT AND RECOMMENDATION |

**INTRODUCTION**

This matter is pending before the court on plaintiff Lloyd Johnson's complaint alleging claims arising out of benefits he alleges defendants owed him under a policy of worker's compensation insurance issued to Mr. Johnson's then-employer, Midwest Construction, Inc. ("Midwest"), for a work-related injury that occurred in March, 2016.  See  Docket No. 1. Jurisdiction is premised on diverse citizenship between Mr. Johnson and the defendant and an amount in controversy in excess of $75,000.  See 28 U.S.C. § 1332.  Now pending is a motion for summary judgment by defendant.  See Docket No. 18.  Mr. Johnson opposes the motion.  See Docket No. 23.  This matter was referred to this magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and the October 16, 2014, standing order of the Honorable Jeffrey L. Viken, Chief United States District Judge.  See Docket No. 39.

**FACTS**

Mr. Johnson's complaint alleges six causes of action:  (1) worker's compensation insurance bad faith; (2) intentional infliction of emotional distress; (3) conversion; (4) unfair and deceptive insurance practices; (5) attorney's fees; and (6) punitive damages.  The foundation for each of Mr. Johnson's causes of action, however, is his claim that defendant prematurely and improperly determined he was at maximum medial improvement (MMI) and discontinued his temporary total disability (TTD) worker's compensation benefit payments.  See Docket No. 1 at ¶ 22.[1]

The facts which are necessary to resolve defendant's motion are not complicated.  The defendant submitted its statement of undisputed facts (Docket No. 20) and the plaintiff submitted his response (Docket No. 24) as required by Fᴇᴅ. R. Cɪᴠ. P. 56 and Local Rule 56.1.A and B.  The following recitation of facts is gleaned from the court's reconciliation of those two statements and the supporting documents provided by both parties which supply the evidentiary bases for the same.

Mr. Johnson sustained a work-related injury on March 28, 2016, while working for Midwest Construction.  Mr. Johnson fell off the last step of a ladder, landing on his right hip.  Midwest and Acuity accepted compensability of the injury as work-related and paid benefits.   A few weeks after the injury,

---

[1] As will be explained later in this opinion, the practical result of this action is that Mr. Johnson's weekly benefit payments thereafter, for a period of approximately nine weeks, switched from TTD payments to permanent partial disability (PPD) payments until such time as the assigned impairment rating was paid out.

Mr. Johnson reported to the emergency room at Avera St. Mary's Hospital in Pierre, South Dakota, complaining of pain in his low back, right buttock, and radiating down his right leg.  By July, 2016, Mr. Johnson described his pain as being located in the right low back, lateral hip, and groin as well as in the right calf, ankle and right great toe.

Mr. Johnson saw several physicians and received treatment for these injuries/pain complaints.  Mr. Johnson continued to work for Midwest Construction throughout 2016, though his weekly hours varied.  A record of Mr. Johnson's hours and pay is found at Docket No. 22-5.  After his 2016 injury, Mr. Johnson sometimes worked 80 hours per two-week pay period, but sometimes worked as few as 8 hours per week.

One of Mr. Johnson's treating physicians (Dr. Rasmussen) opined Mr. Johnson had reached maximum medical improvement (MMI) from the March, 2016, injury by September of 2016.  Shortly thereafter, however, Mr. Johnson re-injured himself on December 21, 2016, when his right leg gave out and he fell down a flight of stairs while he was at work.  Mr. Johnson submitted a new report of injury which stated he believed his right leg gave out because of the original March, 2016, injury.  Mr. Johnson reported injury to his shoulder, back, right leg, and neck as a result of the December, 2016, fall.

Mr. Johnson pursued treatment for these new injuries and continued to receive medical treatment for the original injuries.  Mr. Johnson's medical treatment and evaluations included multiple MRIs of his pelvis, hip, and spine.

He sought several specialized evaluations including with a neurologist, neurosurgeon, and an orthopedic surgeon.

On August 23, 2017, another of Mr. Johnson's treating physicians (Dr. Janssen, a physical medicine and rehabilitation physician) stated that Mr. Johnson was at maximum medical improvement.[2]  Though Mr. Johnson objects to this statement as irrelevant, it clearly is relevant.  As explained by the DOL in Docket No. 25-25 (quoted extensively below), maximum medical improvement is the point, under South Dakota worker's compensation law, at which South Dakota worker's compensation statutes permit the insurer to obtain an impairment rating based upon the permanent damage caused by the work-related injury.  This is because the loss has become "ascertainable" and the worker's permanent disability and the extent thereof that has resulted from the injury will get no better or no worse.  See SDCL § 62-1-1(2).  At maximum medical improvement, the statutes allow for an impairment rating to be determined pursuant to SDCL § 62-1-1.2 and for permanent partial benefits (PPD) (as opposed to temporary total, or TTD) to be paid in accordance with said rating pursuant to SDCL §§ 62-4-5 and 62-4-6.

Acuity secured an independent medical evaluation (IME) from Dr. Thomas Ripperda.  Dr. Ripperda performed the IME on September 11, 2017.  Dr. Ripperda examined Mr. Johnson and reviewed Mr. Johnson's

---

[2] Acuity's statement of undisputed facts incorrectly indicated the treating physician who indicated Mr. Johnson was at MMI was Dr. Rasmussen.  The record to which this statement of fact refers, however, is clearly Dr. Janssen's record.

extensive medical records.  The purpose of Dr. Ripperda's IME was to determine whether Mr. Johnson had reached maximum medical improvement (MMI) and whether Mr. Johnson had suffered a permanent disability as a result of his work-related injuries.  Dr. Ripperda concluded Mr. Johnson was at MMI and that he had sustained a 3% impairment of the whole person impairment rating.

Dr. Chicoine, Mr. Johnson's treating family physician, disagreed with Dr. Janssen and Dr. Ripperda.  Dr. Chicoine believed Mr. Johnson was not at MMI, and continued to refer Mr. Johnson to other specialists and treatment facilities.  Docket 25-26.

On October 3, 2017, Acuity filed a "motion to terminate benefits and pay impairment rating" with the Department of Labor (DOL).  (See Docket No. 22-9).  By this time, Mr. Johnson's petition for hearing with the DOL (which he originally filed *pro se*—it is not clear to this court when he first became represented by current counsel) had been on file with the DOL for approximately one year.  See Docket No. 28-2.

Acuity's motion to terminate benefits and pay impairment rating requested the DOL for an interim order finding that employer/insurer had a reasonable basis to terminate temporary total disability (TTD) benefits and to convert the impairment rating assigned by Dr. Ripperda into permanent partial disability (PPD) benefit payments, until the rating had been paid in full.  See Docket 22-9.

The motion to terminate requested the DOL to make a specific finding that, based on Dr. Ripperda's findings, Acuity had a "reasonable basis" to terminate TTD benefits and begin paying the impairment rating as PPD benefits until the impairment rating was paid in full.  Id. at p. 4.  The petition also stated that its request was for an "interim order" and did not preclude Mr. Johnson from continuing to be heard on his pending petition for hearing. Id.

Mr. Johnson, through counsel, responded to Acuity's motion to terminate.  Docket No. 22-11.  Mr. Johnson asserted Acuity's motion to terminate was premature, because the IME opinion upon which it was based was also premature.  Id. at p. 1.  Mr. Johnson asserted the IME opinion was premature because Mr. Johnson was not (contrary to the opinion of Dr. Janssen) at MMI.  Id. at p. 7.  Mr. Johnson indicated he continued to seek treatment options for his work-related injury.  Id.  Further, Mr. Johnson had by then already obtained a vocational opinion from Mr. Richard Ostrander opining that, contrary to Dr. Ripperda's 3% impairment rating, Mr. Johnson was entitled to permanent total disability ("odd-lot") benefits.  Id. at p. 6. Mr. Johnson asserted that these same issues would be re-litigated at the full DOL hearing, and that Acuity was merely asking for an advisory opinion regarding the reasonableness of its actions (i.e. whether Acuity would be committing bad faith by terminating TTD benefits and switching to PPD benefits).  Id. at pp. 8-9.  The DOL, therefore, lacked jurisdiction according to Mr. Johnson.  Id.  at p. 9.

Acuity replied to Mr. Johnson's response to its motion to terminate. Docket 28-1.  Acuity argued it was merely asking permission to do what the law already allowed it to do.  Id. at p. 1.  Acuity cited the worker's compensation statutes which explain the relationship between TTD and PPD compensation benefits and asserted "a loss becomes ascertainable when it becomes apparent that permanent disability and the extent thereof has resulted from an injury and that the injured area will get no better or no worse because of the injury."  Id.[3]  Because Mr. Johnson's loss had become ascertainable, Acuity argued, its termination of TTD benefits and payment of PPD benefits was appropriate per Dr. Ripperda's opinion and assignment of a 3% impairment rating.  Id. at p. 2.

Though Acuity cited no specific statute which provided authority for its *motion* to switch from TTD to PPD benefits during the pendency of an already filed claimant's petition for worker's compensation benefits, Acuity argued the

---

[3] Acuity's response cited SDCL § 62-1-1(8) and SDCL § 62-7-39.  Those statutes state:

SDCL § 62-1-1(8):  "Temporary disability, total or partial," the time beginning on the date of injury, subject to the limitations set forth in § 62-4-2, and continuing until the employee attains complete recovery or until a specific loss becomes ascertainable, whichever comes first.

SDCL § 62-7-39:  An employee, employer, employer's insurer, or self-insured employer shall be permitted to use the results of post-offer base line testing or a functional capacity assessment, as utilized by Guidelines to the Evaluation of Permanent Impairment established by the American Medical Association, sixth edition, July 2009 reprint, performed during the course of employment, or other medical evidence of impairment for the purpose of determining permanent partial or permanent total compensation due to an employee.

DOL could nevertheless determine its motion before Mr. Johnson's petition was ready for a final hearing.  Id. at 3.

On December 4, 2017, the DOL issued a letter decision on Acuity's motion to terminate TTD benefits.  Docket No. 22-12.  In its FACT section, the DOL explained that while Mr. Johnson resisted Acuity's motion, he did not actually dispute Acuity's decision to discontinue TTD benefits.  Id. at 2.

In the ANALYSIS section, the DOL explained that while no section of the South Dakota code set out a procedure for termination of TTD benefits by a worker's compensation insurer, "[t]he power to terminate benefits is implicitly granted by SDCL 62-1-1."  Id. at p. 2.  The DOL explained that "[s]o long as one of the two prerequisites set out in SDCL 62-4-2 is met, Employer/Insurer is not required to obtain an order from the Department of Labor prior to terminating temporary benefits."  Id.   The DOL went on to determine it did not have jurisdiction to do what Acuity requested.  The DOL stated, "[Mr. Johnson] acknowledges that [Acuity] is within its right to terminate [TTD] benefits since [Mr. Johnson] has received an impairment rating.  Since the Department is only authorized to rule on issues in dispute, it is without jurisdiction to rule on [Acuity's] motion."  Id. at p. 4.

On February 28, 2018, Mr. Johnson moved the DOL to reinstate his TTD benefits retroactive to December 19, 2017.[4]  Docket No. 25-23 at p. 10.

---

[44] This is the date the PPD payments of the 3% impairment rating ran out.  See Docket 22-13.  After that date, Acuity discontinued making weekly disability payments to Mr. Johnson during the pendency of his petition for hearing before the DOL, until the final settlement was approved by the DOL on June 29,

Mr. Johnson based his request upon the opinion of one of his treating physicians (Dr. Chicoine) who opined Mr. Johnson had not yet reached MMI, and that Acuity's earlier decision to terminate TTD benefits had therefore been inappropriate. Id. On April 3, 2018, the DOL issued a letter decision denying Mr. Johnson's request to reinstate TTD benefits.[5]  Docket No. 25-25.  The DOL discussed the history of Mr. Johnson's injury and worker's compensation claim, including Dr. Ripperda's earlier IME, Dr. Ripperda's opinion that Mr. Johnson had reached MMI, and Dr. Ripperda's  assignment of a 3% impairment rating.  Id. at p. 2.

The DOL administrative law judge acknowledged Mr. Johnson was challenging the discontinuance of TTD benefits, and that Mr. Johnson based his position on Dr. Chicoine's opinion that he (Johnson) had not yet reached MMI.  Id.  This court quotes the majority of the DOL administrative judge's reasoning in denying Mr. Johnson's motion to reinstate benefits below, because it is informative in explaining the interplay between TTD and PPD benefits under the South Dakota worker's compensation statutory scheme, and because it clarifies what had occurred in Mr. Johnson's worker's compensation case by the time Mr. Johnson moved to reinstate benefits:

The definition of temporary disability, found at SDCL 62-1-1(8) is "the time beginning on the date of injury, subject to the limitations

---

2018.  Id.; See also, Docket 25-22 (DOL's order approving compromise settlement agreement).

[5] The letter decision is dated April 3, 2017.  That is clearly a typographical error, because within the body of the letter, the administrative law judge referred to documents which were dated in 2018.  See Docket 25-25, p. 1.

set forth in § 62-4-2, and continuing until the employee attains complete recovery *or until a specific loss becomes ascertainable*, whichever comes first. (Emphasis added).[6] Subsection 2 of this statute provides "a loss becomes ascertainable when it becomes apparent that permanent disability and the extent thereof has resulted from an injury and that the injured area will get no better or no worse because of the injury."

SDCL 62-4-5 governs the payment of permanent partial disability payments:

> If, after an injury has been sustained, the employee as a result thereof becomes partially incapacitated from pursuing the employee's usual and customary line of employment, or if the employee has been released by the employee's physician from temporary total disability and *has not been given a rating to which § 62-4-6 would apply*, the employee shall receive compensation, subject to the limitations as to maximum amounts fixed in § 62-4-3, equal to one-half of the difference between the average amount which the employee is earning or is able to earn in some suitable employment or business after the accident. (Emphasis added).[7]

Neither SDCL 62-1-1(2) nor SDCL 62-4-5 specifies who is entitled to make the determination that an ascertainable loss has occurred or that a rating is assignable.  So far, Claimant has been seen by various doctors who have provided various opinions regarding treatment prognosis.  Most importantly, the IME doctor, Dr. Ripperda, and Dr. Chicoine, have differing opinions as to whether Claimant has reached MMI.  As with any other factual determination, the Department must weigh the evidence on each side to determine which opinion is more persuasive.

Employer/Insurer argue that the issue of TTD benefits should be considered at a full evidentiary hearing.  The Department agrees with Employer/Insurer.  SDCL 62-7-33 provides an avenue by which a party may contest the payment of benefits.  It states in relevant part:

> Any payment, including medical payments under § 62-4-1, and disability payments under § 62-4-3 if the

---

[6] The emphasis was added by the DOL administrative law judge.
[7] The emphasis was added by the DOL administrative law judge.

earnings have substantially changed since the date of injury, made or to be made under this title may be reviewed by the Department of Labor and Regulation pursuant to § 62-7-12 at the written request of the employer or of the employee and on such review payments may be ended, diminished, increased, or awarded subject to the maximum or minimum amounts provided for in this title, if the department finds that a change in the condition of the employee warrants such action.

This statute dictates that a review of benefits be pursuant to 62-7-12. That statute provides "if the employer and injured employee or the employee's representative or dependents fail to reach an agreement in regard to compensation under this title, either party may notify the Department of Labor and Regulation and request a hearing according to rules promulgated pursuant to Chapter 1-26 by the secretary of labor and regulation."

Finally, worker's compensation hearings are conducted in accordance with SDCL 1-26-18:

Opportunity shall be afforded all parties to respond and present evidence on issues of fact and argument on issues of law or policy . . . A party to a contested case proceeding may appear in person or by counsel, or both, may be present during the giving of all evidence, may have reasonable opportunity to inspect all documentary evidence, may examine and cross-examine witnesses, may present evidence in support of the party's interest, and may have subpoenas issued to compel attendance of witnesses and production of evidence in the party's behalf.

These statutes, when read together, provide for a full evidentiary hearing to consider a review of benefits. Nothing in the code specifically grants the Department the ability to consider reinstatement of benefits before that hearing. In this case, Claimant bases his motion on a one-page letter from Dr. Chicoine in which he opines Claimant has not yet reached MMI. At the time of this hearing, neither Dr. Ripperda nor Dr. Chicoine had been deposed. Before the Department rules on whether Claimant's TTD benefits were properly terminated, the parties must have the opportunity to examine and cross-examine Dr. Ripperda and Dr. Chicoine as provided by SDCL 1-26-18. The Department feels that further testimony of these experts is necessary to decide when

11

an ascertainable loss occurred.  At the full hearing, should the
Department find that Insurer prematurely ended temporary
benefits, it may retroactively award further TTD benefits as well as
prejudgment interest pursuant to SDCL 54-3-4.

See Docket 25-25, pp. 3-5.

It is unclear from the record whether or when the full DOL hearing on
Mr. Johnson's petition occurred.  On June 29, 2018, however, the DOL
approved a compromise settlement agreement and partial release and petition
for lump sum settlement.  See Docket No. 25-22.  Approximately four months
later, on October 31, 2018, Mr. Johnson filed this bad faith lawsuit.  Docket 1.

## DISCUSSION

### A.    Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary
judgment is appropriate where the moving party "shows that there is no
genuine dispute as to any material fact and the movant is entitled to judgment
as a matter of law."  FED. R. CIV. P. 56(a).

The court must view the facts, and inferences from those facts, in the
light most favorable to the nonmoving party.  See Matsushita Elec. Co. v.
Zenith Radio Corp., 475 U.S. 574, 587–88 (1986) (citing United States v.
Diebold, Inc., 369 U.S. 654, 655 (1962)); Helton v. Southland Racing Corp.,
600 F.3d 954, 957 (8th Cir. 2010) (per curiam).  Summary judgment will not lie
if the evidence is such that a reasonable jury could return a verdict for the
nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986); Allison v. Flexway Trucking, Inc., 28 F.3d 64, 66 (8th Cir. 1994).

12

The burden is placed on the moving party to establish both the absence of any genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  Once the movant has met its burden, the nonmoving party may not simply rest on the allegations in the pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists.  Anderson, 477 U.S. at 256; FED. R. CIV. P. 56(e) (each party must properly support its own assertions of fact and properly address the opposing party's assertions of fact, as required by Rule 56(c)).

The underlying substantive law identifies which facts are "material" for purposes of a motion for summary judgment.  Anderson, 477 U.S. at 248.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Id. (citing 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2725, at 93–95 (3d ed. 1983)).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Id. at 247–48.  Essentially, the availability of summary judgment turns on whether a proper jury question is presented: "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual

13

issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

**B.    South Dakota Worker's Compensation Law.**

Jurisdiction in this matter is premised on the diverse citizenship of the parties and an amount in controversy in excess of $75,000. See 28 U.S.C. § 1332. In diversity cases, the substantive law of the state—here, South Dakota law—applies to determine the rights and obligations of the parties while federal rules of procedure are applied. See Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78 (1938); In re Baycol Products Litigation, 616 F.3d 778, 785 (8th Cir. 2010).

The South Dakota worker's compensation scheme limits the right of employees to sue for personal injury for work-related injuries to only those instances in which injury is brought about by an intentional tort. See SDCL § 62-3-2. All other injuries are covered by the workers compensation scheme. Id.

The public policy behind the scheme is to provide a "remedy which is both expeditious and *independent of proof of fault.*" Steinberg v. S.D. Dept. of Military and Veterans Affairs, 607 N.W.2d 596, 605 (S.D. 2000) (emphasis in original). The scheme represents a quid pro quo under "which the employer gives up normal defenses and assumes automatic liability while the employee gives up the right to common law verdicts." Id. (quoting 2 Larson's Worker's Compensation Law § 72.22, at 14-152). The scheme accomplishes its goal by providing a sure source of payment for injured workers for work-related

14

injuries, both to compensate employees for the injury itself and for loss of income occasioned by their injury.  Thomas v. Custer State Hosp., 511 N.W.2d 576, 579 (S.D. 1994).  To that end, the worker's compensation statutes are to be liberally construed in favor of injured employees.  Id.  The scheme is "purely statutory and the rights of the parties and the manner of procedure under the law must be determined by" those statutes.  Sopko v. C & R Transfer Co., Inc., 665 N.W.2d 94, 97 (S.D. 2003) ("Sopko II").

An injured employee is entitled to payment of medical expenses (SDCL § 62-4-1) temporary disability (SDCL § 62-4-3) and permanent disability to the extent the injury affects his or her ability to work (SDCL §§ 62-4-2 through -7.1).  This includes a schedule of payments for injuries resulting in the loss of specified body parts.  See SDCL § 62-4-6.  There is also a provision for rehabilitation benefits during a period of rehabilitation (SDCL § 62-4-5.1).

The South Dakota DOL is a fully-formed forum for litigating workers compensation claims.  A case is initiated by filing a written petition for hearing.  ARSD 47:03:01:02 & 47:03:01:01.01.  An adverse party may assert a counterclaim or claim for setoff.  ARSD 47:03:01:20.  Thereafter, discovery including depositions are available.  ARSD 47:03:01:05.01.  Motions practice including motions for default, to dismiss, and for summary judgment are available to the parties.  ARSD 47:03:01:09 & -:08; see also SDCL § 1-26-18(1).  The DOL can issue subpoenas for witnesses and documents.  See SDCL § 62-2-6.

The DOL may require the parties to attend a pre-hearing conference. ARSD 47:03:01:11. The topics that may be discussed at the conference include the necessity or desirability of amending the pleadings, statements and simplification of the issues, the elimination of frivolous claims or defenses, the possible stipulation to facts or admission of evidence, and the avoidance of unnecessary or cumulative evidence. ARSD 47:03:01:13. Following such a hearing the DOL enters an order reciting the action taken and this order controls the course of the hearing unless modified subsequently. ARSD 47:03:01:15.

The rules of evidence apply at contested hearings unless agency rules provide otherwise (no DOL rule appears contrary to this). SDCL § 1-26-19(1). Cross-examination of witnesses can be conducted. Id. at (2). And the ALJ may take judicial notice of judicially cognizable facts. Id. at (3).

An employer can require an employee to undergo a compulsory IME with a medical professional of the employer's choosing. See SDCL § 62-7-1. If the employee wishes, he or she can have their own medical professional present during the IME. See SDCL § 62-7-2.

The parties can arrive at an agreement as to compensation owed under the workers compensation scheme. See SDCL § 62-7-5. They can then submit their agreement to the DOL which may approve it. Id. If the DOL approves the agreement, it becomes enforceable for all purposes under the workers compensation scheme. Id. If the parties cannot agree on compensation owed

under the scheme, either party may file a petition with the DOL to request a hearing.  See SDCL § 62-7-12.

DOL hearings are conducted by licensed attorneys.  See SDCL § 62-07-12.1.  The hearings are recorded.  See SDCL § 62-7-13.  Following a hearing, the DOL ALJ "shall file its decision, its findings of fact, and conclusions of law and shall serve the same on the parties forthwith by dispatching a copy addressed to each party or the party's attorney by mail, postage paid."  Id.

Following a hearing, any party may petition the secretary of the DOL for review within 10 days of receipt of the ALJ's decision described in § 62-7-13. See SDCL § 62-7-16.  If a petition for review is filed with the secretary, there is no final appealable agency decision until the secretary issues its final determination on the petition.  See SDCL § 62-7-18.

Alternatively, a party may elect to treat the ALJ's decision described in § 62-7-13 as the final decision of the DOL and appeal directly from that decision to the state circuit court.  See SDCL § 62-7-17.  Once an appeal to the circuit court is taken, the court may review not only the final order or decision of the DOL but also any intermediate orders or decisions affecting substantial rights.  See SDCL § 62-7-19.  The DOL decision must constitute a final agency decision before appeal to the circuit court can be pursued, unless other review is provided for by law.  SDCL § 1-26-30.

A final decision or order of an agency in a contested case must be in writing or stated in the record.  SDCL § 1-26-25.  The decision may affirm,

17

modify, or nullify previous action taken in the case.  Id.  The final agency action

"shall include findings of fact and conclusions of law, separately stated."  Id.

The failure by an agency to make findings of fact and conclusions of law is a

violation of § 1-26-25.  State Dept. of Pub. Safety v. Eastman, 273 N.W.2d 159,

160 (S.D. 1978).  If a party attempts to appeal from a contested agency decision

that does not contain findings of fact and conclusions of law, the circuit court

must remand to the agency for the making of such findings and conclusions.

Id. at 161.  See also Johnson v. Skelly Oil Co., 359 N.W.2d 130, 134 (S.D.

1984) (stating DOL was required to make factual findings as to whether injured

employee's acquisition of a special van constituted "other suitable and proper

care" under worker's compensation statute SDCL § 62-4-1).

Once the DOL signs a document containing its findings of fact and

conclusions of law deciding all issues before it, the agency's decision is final

and, thus, appealable to circuit court.  Sudbeck v. Dale Electronics, Inc. 519

N.W.2d 63, 66 (S.D. 1994).  An aggrieved party has 30 days within which to

appeal once the DOL has served its notice of its final decision.  Id. (citing SDCL

§ 1-26-31).

Because the DOL can decide issues presented in a petition piecemeal,

generally an aggrieved party has no right to appeal until all issues presented in

a petition are decided.  Baier v. Dean Kurtz Const., Inc., 761 N.W.2d 601 (S.D.

2009).  In the Baier case, an employee worked for the same employer from

1987 until 2005.  Id. at 602-03.  He suffered a low back injury in 1999 and

recovered and returned to work.  Id.  Then in 2004 it was discovered that he

18

needed both hips replaced.  Id.  The employer had been insured for workers compensation benefits by two different companies, one at the time of the 1999 injury and a different insurance company in 2004.  Id.

The employee filed a petition before the DOL for workers compensation benefits for his hips.  Id. at 603.  Among the issues to be decided were (1) causation for the hip condition (i.e. whether it was work-related), (2) what medical expenses were recoverable, (3) whether the employee was entitled to temporary total disability, (4) which insurer was liable for the medical expenses associated with the hip condition, and (5) apportionment.  Id. at 603.

The 2004 insurance company filed a motion for (partial) summary judgment on the issue of which insurer was responsible for the hip condition. Id. at 603.  The DOL issued a written decision with findings of fact and conclusions of law holding the 2004 insurer responsible for the employee's hip condition.  Id. at 603-04.

Approximately 16 months later, the DOL entered another order with findings of fact and conclusions of law deciding the remaining issues on the employee's petition.  Id. at 604.  The 2004 insurer timely appealed from the last order, seeking judicial review of all the DOL's orders, including the order holding it and not the 1999 insurer liable.  Id. at 604.

Before the circuit court, the employee argued the insurer's appeal of the DOL decision holding the 2004 insurer, and not the 1999 insurer, liable was not timely and should not be considered because more than 30 days had elapsed between the notice of appeal and the DOL decision in question.  Id. at

605.  The court held the 2004 insurer's appeal was timely because it was taken within 30 days of the final DOL decision deciding the remaining issues; the earlier DOL decision deciding only which insurer was liable was not a final appealable decision because that written decision did not dispose of all the issues in the case.  Id.  The court noted when the DOL issued its first decision, it specifically retained jurisdiction to determine the other issues.  Id.

Where an administrative agency has taken action in a matter, the aggrieved party must generally exhaust administrative remedies before appealing to the circuit court.  Dan Nelson, Automotive, Inc. v. Viken, 706 N.W.2d 239, 243 (S.D. 2005).  The exhaustion doctrine determines *when* a circuit court can review agency action.  Id. at 242.

**C.     Mr. Johnson's Claims**

Acuity moves for summary judgment on each of the six claims articulated in by Mr. Johnson in his complaint, both on their merits and because it asserts they are barred by waiver and estoppel.  At the heart of all of Mr. Johnson's claims is his assertion that Acuity acted without a reasonable basis when it switched his TTD disability benefits to PPD benefits. Mr. Johnson asserts this decision was premature because one of his treating physicians (Dr. Chicoine) was of the opinion that at the time Acuity took this action, Mr. Johnson had not yet reached MMI.  Acuity's estoppel and waiver theories, along with each of Mr. Johnson's claims, are discussed separately below.

### 1.    Neither Waiver Nor Estoppel Bar Mr. Johnson's Claims

Before discussing the merits of the bad faith claim, the court takes a short detour to discuss defenses raised by Acuity which it claims should bar Mr. Johnson's bad faith claim:  waiver, equitable estoppel and judicial estoppel.

A waiver exists "where one in possession of any right, whether conferred by law or by contract, and of full knowledge of the material facts, does or forebears the doing of something inconsistent with the existence of a right or of his intention to rely on it."  Western Casualty and Surety Co. v. American Nat. Fire Ins. Co. 318 N.W.2d 126, 128 (S.D. 1982).  If a party waives his rights, he may be estopped from asserting those rights at a later time.  Harms v. Northland Ford Dealers, 602 N.W.2d 58, 62 (S.D. 1999).

To create an estoppel, there must have been some action by the party to be estopped which has caused the second party to rely on said conduct to the second party's detriment, thus making it inequitable to allow the estopped party to claim what would otherwise be his legal right.  Western Casualty, 318 N.W.2d at 128.

Finally, judicial estoppel prevents a litigant from asserting inconsistent legal positions in different legal forums.  The gravamen of judicial estoppel "is the intentional assertion of an inconsistent position that perverts the judicial machinery."  Hayes v. Rosenbaum Signs & Outdoor Advertising, Inc., 853 N.W.2d 878, 882 (S.D. 2014) (cleaned up).  This doctrine applies to judicial as well as quasi-judicial forums.  Id.  The following elements should be considered when determining whether to apply judicial estoppel:  (1) the later position

21

must be clearly inconsistent with the earlier one; (2) the earlier position was judicially accepted; (3) creating the risk of inconsistent legal positions; and (4) the party taking the inconsistent position would derive an unfair advantage or impose an unfair detriment to the opponent if not estopped.  Id. at 883.

Acuity asserts the doctrines of waiver, equitable estoppel and judicial estoppel are applicable all for the same reason:  the position Mr. Johnson took before the DOL when Acuity moved to terminate TTD benefits.  Acuity asserts Mr. Johnson has taken inconsistent positions about Acuity's termination of TTD benefits because, Acuity asserts, Mr. Johnson earlier acknowledged Acuity acted within its statutory rights by terminating TTD benefits, but now Mr. Johnson claims that very same action by Acuity constitutes bad faith. Acuity relies upon the DOL's statement(s) in its December 4, 2017, letter decision (Docket No. 22-12), indicating "while claimant resisted this motion, claimant has not actually disputed employer/insurer's decision to discontinue temporary total benefits;" and "[h]ere, claimant acknowledges that employer/insurer is within its right to terminate temporary benefits since claimant has received an impairment rating;" and "[s]ince claimant is not contesting employer/insurer's ability to discontinue temporary benefits in this case, the department lacks jurisdiction to consider employer/insurer's motion." Id. at pp. 2-4.

This court rejects Acuity's assertion that Mr. Johnson's bad faith claim is barred by waiver, equitable estoppel, or judicial estoppel.  In his response to Acuity's motion to terminate TTD benefits before the DOL, Mr. Johnson did not

assert a position which was inconsistent with the position he asserts before this court.  Mr. Johnson asserted before the DOL, and he asserts now, that Acuity's termination of TTD benefits was improper and premature because, contrary to the opinions of Dr. Ripperda and Dr. Janssen, Mr. Johnson did not agree he had reached MMI.  See Docket No. 22-11 at p. 7 ("however, Ripperda was not aware of Curt's surgical consultation with Dr. Watt, which is scheduled for November 16, 2017.  Therefore, Curt is still treating and is currently not at maximum medical improvement.").  Acuity is correct that Mr. Johnson did not, (and could not) in his response to Acuity's motion to terminate benefits, dispute that Acuity was within its *statutory rights* to terminate TTD benefits.  This is because Acuity had obtained an impairment rating pursuant to SDCL § 62-4-6 after two physicians (one treating physician, Dr. Janssen, and one IME physician, Dr. Ripperda) concluded that he had reached MMI.

But the position taken by Mr. Johnson before the DOL and the position taken by Mr. Johnson in this forum is the same: that though Acuity may have been within its statutory rights to discontinue TTD benefits when it did, its action in doing so was nevertheless *unreasonable*.  Mr. Johnson argued before the DOL, as he does here, that Acuity was unreasonable to discontinue his TTD benefits because Dr. Janssen and Dr. Ripperda's opinions about his medical condition were not well-founded because one of his treating physicians (Dr. Chicoine) opined that contrary to the opinions of Drs. Janssen and Ripperda, he (Johnson) was *not* at MMI.  Instead, Mr. Johnson argued (as he

argues in this forum) Acuity acted unreasonably because it relied on Dr. Janssen and Dr. Ripperda's opinions instead of the opinion of Dr. Chicoine, who continued to advise Acuity that Mr. Johnson was not at MMI, and who continued to refer Mr. Johnson to other specialists and treatment centers in search of the cause of his ongoing symptoms and disability.

In further opposition to the application of estoppel and waiver, Mr. Johnson cites his own motion to the DOL, dated February 20, 2018, which requested the DOL to order Acuity to reinstate Mr. Johnson's TTD benefits. See Docket No. 25-24.  In that document, Mr. Johnson reiterated Dr. Chicoine's opinion that Johnson had not yet reached MMI, and that Acuity's previous discontinuance of TTD benefits had therefore been unjustified.  Id. at pp. 6-7.  This course of action is consistent with Mr. Johnson's current position in this court (i.e. that Acuity's termination of TTD benefits based upon the opinions of Dr. Janssen and Dr. Ripperda was unreasonable).

Mr. Johnson asserted before the DOL and asserts in this forum that Acuity's reliance on the opinions of Dr. Janssen and Dr. Ripperda instead of the opinion of Dr. Chicoine regarding when Mr. Johnson reached MMI was not reasonable.  There is no divergence between Mr. Johnson's position before the DOL and his position in this forum.

Based upon these facts, Mr. Johnson has not waived his right to bring a bad faith action because he has done nothing "inconsistent with the existence of a right or of his intention to rely on it."  Western Casualty, 318 N.W.2d at

24

128. Nor is he equitably estopped from bringing a bad faith action, because he has not taken any action upon which Acuity has relied to its detriment, thus making it inequitable for Mr. Johnson to now claim Acuity acted in bad faith. Id.

Finally, Mr. Johnson is not judicially estopped from bringing this bad faith action, because as explained above, (1) he has not taken inconsistent positions before the DOL and before this court; (2) Mr. Johnson's earlier position (that he had not yet reached MMI when Acuity discontinued TTD benefits and that Acuity's discontinuation of TTD benefits was therefore inappropriate and unreasonable) was *not* previously judicially accepted by the DOL.  This is because the DOL expressly declined to rule on the issue when Mr. Johnson moved to reinstate TTD benefits.  See Docket No. 25-25, p. 5. (DOL denies Mr. Johnson's motion to reinstate TTD benefits pending a full evidentiary hearing); (3) there was no risk of inconsistent legal positions; and (4) because Mr. Johnson did not take inconsistent positions, he did not derive an unfair advantage or impose an unfair detriment to Acuity if judicial estoppel is not imposed.  Hayes, 853 N.W.2d at 883.

Acuity also cites Tovares v. Gallagher Basset Services, Inc., 379 F. Supp.3d 791,  804 (D.S.D. 2019) for the proposition that Mr. Johnson cannot prevail in this bad faith action because he did not obtain an administrative ruling from the DOL that he was entitled to benefits under the worker's compensation act.  Id.  But Tovares is inapposite.  In Tovares, the claimant dismissed her worker's compensation petition, without seeking approval of a

compromise settlement agreement pursuant to SDCL § 62-7-5.  Id.  In Tovares
the court recognized the distinction between an outright dismissal versus the
DOL's approval of a compromise agreement under SDCL § 62-7-5.
"Compromise agreements have the same force and effect as adjudicated
awards."  Id. at 803.  Therefore, because Mr. Johnson obtained an approved
compromise agreement pursuant to SDCL § 62-7-5 (Docket No. 25-22) rather
than simply dismissing his petition before the DOL, his compromise agreement
has the same "force and effect" as an administrative ruling from the DOL.
Tovares, 379 F. Supp. 3d at 803.[8]

### 2.    Mr. Johnson's Bad Faith Claim

To prove a bad faith cause of action against defendants, Mr. Johnson
must show (1) defendants had no reasonable basis for denying his claim for
insurance benefits, and (2) defendants acted with knowledge or a reckless
disregard as to the lack of a reasonable basis for the denial of benefits.  See
Bertelsen v. Allstate Ins. Co., 833 N.W.2d 545, 554 (S.D. 2013) ("Bertelsen

---

[8] This court notes that the DOL's approval of the parties' compromise
agreement is just that—an approval of the parties' apparent agreement that
Mr. Johnson was entitled to a lump-sum payment of worker's compensation
benefits.  The court does not mean to suggest that the DOL made a factual
finding on the particular issue that forms the basis of Mr. Johnson's bad faith
lawsuit in this forum.  That is, the appropriateness of the timing of Acuity's
termination of TTD benefits in favor of the payment of PPD benefits based upon
the 3% impairment rating.

Rather, the DOL (twice) explicitly *declined* to make a finding on that issue.  See
Docket No. 22-12 (DOL's letter decision dated December 12, 2017 dismissing
for lack of jurisdiction Acuity's motion to discontinue TTD benefits); and Docket
No. 25-25 (DOL's letter decision dated April 3, 2018, denying Mr. Johnson's
motion to reinstate TTD benefits).

III");[9] Sawyer v. Farm Bureau Mut. Ins. Co., 619 N.W.2d 644, 649 (S.D. 2000). "However, an insurance company may challenge claims which are fairly debatable and will be found liable only where it has intentionally denied (or failed to process or pay) a claim without a reasonable basis." Bertelsen III, 833 N.W.2d at 554 (cleaned up).

Whether the insurer acted in bad faith is based on "the facts and law available to [the insurer] at the time it made the decision to deny coverage." Id. (quoting DM&E R.R. Corp. v. Acuity, 771 N.W.2d 623, 629 (S.D. 2009)). That the insurer's position is ultimately found to be wrong is insufficient to establish bad faith. DM&E R.R. Corp., 771 N.W.2d at 630 (citation omitted). Instead, the focus is on the existence of a debatable issue, not on which party was correct. Id. Bad faith is usually an issue of fact for the jury. Bertelsen III, 833 N.W.2d at 554; DM& E R.R. Corp., 771 N.W.2d at 629-30; Isaac v. State Farm Mutual Auto. Ins. Co., 522 N.W.2d 752, 758 (S.D. 1994).

When an issue of first impression as to the interpretation of an insurance contract is presented in South Dakota, the South Dakota Supreme Court has held that there was no bad faith as a matter of law in denying the plaintiff's claim where that claim was "fairly debatable" under the law. See Mudlin v. Hills Materials Co., 742 N.W.2d 49, 51-54 (S.D. 2007) (interpreting a coming-and-going scenario under a worker's compensation insurance policy).

---

[9] Bertlesen III was abrogated on other grounds in Manger v. Brinkman, 883 N.W.2d 74, 80, n.7 (S.D. 2016). The ground for abrogation was the appropriate standard of review on appeal of a circuit court's grant or denial of a motion for judgment as a matter of law at the conclusion of a trial. Id.

However, the South Dakota Supreme Court has also held that bad faith claims may be compensable, even when an issue of first impression is presented, if the plaintiff's claim was not "fairly debatable" because the language of the statute mandating coverage was clear.  Bertelsen v. Allstate Ins. Co., 764 N.W.2d 495, 500 (S.D. 2009) (Bertelsen I) (interpreting a worker's compensation statute providing that if an employer denied a claim as nonwork related, any other insurer covering bodily injury "shall pay" according to its policy provisions and applying that statute against an automobile insurer under its medical benefits provision); Isaac, 522 N.W.2d at 758 (holding that a jury question was created by plaintiff's bad faith claim even though there was no South Dakota law on point as to whether a worker's compensation set-off provision in the insurance policy was valid or void).

Finally, in South Dakota state court, failure of an injured employee to first exhaust his workers compensation administrative remedies before the DOL deprives a state circuit court of jurisdiction to entertain claims by the employee of bad faith failure to pay workers compensation benefits.  Zuke v. Presentation Sisters, Inc., 589 N.W.2d 925, 930 (S.D. 1999).  "It is true that the state courts of South Dakota will not entertain a tort action based on a denial of worker's compensation benefits until the department of labor has determined whether the plaintiff is in fact entitled to such benefits."  Id. at 930. Recently, this principle has been extended to bringing a bad faith action in federal court.  Tovares v. Gallagher Basset Services, Inc., 379 F. Supp. 3d 791, 804 (D.S.D. 2019).  In Tovares, the plaintiff sued for worker's compensation

bad faith in federal court.  Id. at 799.  The plaintiff had earlier filed a petition for hearing with the South Dakota DOL seeking payment of medical bills incurred as a result of what she claimed was a work-related injury.  Id.  The insurer denied the claim, because though the plaintiff had undeniably been injured at work, the insurer disputed that the injuries for which she sought medical treatment for were the same injuries that she incurred as a result of the work-related injury.  Id. at 797.

Ultimately, Ms. Tovares settled her claim against the employer/insurer.  Id. at 799.  The employer/insurer maintained its denial of liability, and Ms. Tovares dismissed the petition she had filed with the DOL.  Id.  In other words, the DOL never ruled on Ms. Tovares' claim that the insurer was responsible to pay her medical bills.  When Ms. Tovares brought her bad faith claim in federal court, the insurer argued she was precluded from doing so based on Zuke.  Id. at 800.  But Ms. Tovares cited SDCL § 62-7-5, which states that compromise agreements which are filed with the DOL shall have the same force and effect as adjudicated awards.  Id. at 803.  The court rejected this claim as well, because Ms. Tovares' notice of dismissal was not the same as a compromise agreement which was contemplated pursuant to § 62-7-5; therefore, it did not have the same force and effect as an adjudicated claim.  Id. at 804.  Ms. Tovares' bad faith claim failed because she had not obtained an administrative ruling that she was entitled to benefits under the worker's compensation act.  Id.

The allegations in Mr. Johnson's complaint indicate that the basis for Mr. Johnson's bad faith claim is Acuity's failure to credit the opinion of one of his treating physicians (Dr. Chicoine) that Mr. Johnson continued to be temporarily and totally disabled, despite Dr. Ripperda's opinion to the contrary. See Docket 1, pp. 4-6.   But Mr. Johnson has failed to create a genuine issue of fact to prove that Acuity made this decision (1) with no reasonable basis; and (2) that by accepting Dr. Ripperda's opinion instead of Dr. Chicoine's opinion, Acuity acted with knowledge or a reckless disregard as to the lack of a reasonable basis for the denial of benefits.   Bertelsen, 833 N.W.2d at 554. In other words, Mr. Johnson's claim was "fairly debatable."

Acuity's decision to send Mr. Johnson to Dr. Ripperda for an independent medical exam for an opinion about whether Mr. Johnson had reached MMI and for a permanent partial disability (PPD) rating was made only after one of Mr. Johnson's treating physicians (Dr. Janssen), on August 23, 2017, opined that Mr. Johnson was at MMI.  See Docket 22-8.  After this opinion, Acuity sent Mr. Johnson to Dr. Ripperda.  Dr. Ripperda examined Mr. Johnson on September 11, 2017.  Docket 22-4.  Dr. Ripperda concurred that Mr. Johnson was at MMI, and assigned a 3% impairment rating.  Id. at pp. 24.

Acuity asked the DOL for a determination to allow it to switch Mr. Johnson's disability payments from TTD payments to PPD payments, based upon the 3% rating Dr. Ripperda assigned.  Docket No. 22-9.  Mr. Johnson responded to Acuity's motion, arguing he already had a petition

for hearing pending before the DOL to determine what benefits were due to him, that he was not at MMI, and that he continued to seek treatment for his injuries.  Docket No. 22-11.  According to Mr. Johnson, the issue Acuity was asking the DOL to determine would later be determined at the full hearing, and the DOL did not have jurisdiction to issue a premature or advisory opinion at Acuity's request.  Id.

The DOL agreed with Mr. Johnson and dismissed Acuity's motion for lack of jurisdiction. Docket No. 22-12.  But a few months after Acuity had paid out the entirety of the 3% impairment rating in PPD benefits, on February 20, 2018, Mr. Johnson asked the DOL to address the issue again, when it moved the DOL to reinstate TTD benefits.  Docket Nos. 22-13 and 25-24.  On April 3, 2018,[10] the DOL denied Mr. Johnson's motion, explaining that though there was a disagreement between Mr. Johnson's treating physician (Dr. Chicoine) and the IME physician (Dr. Ripperda) about whether Mr. Johnson remained temporarily and totally disabled and therefore entitled to ongoing TTD benefits, the DOL was likewise not willing to summarily reinstate benefits.  Id. at p. 3. The DOL concluded:

> In this case, claimant bases his motion on a one-page letter from
> Dr. Chicoine in which he opines claimant has not yet reached MMI.
> At the time of this hearing, neither Dr. Ripperda nor Dr. Chicoine
> had been deposed.  Before the Department rules on when
> Claimant's TTD benefits were properly terminated, the parties
> must have the opportunity to examine and cross-examine
> Dr. Ripperda and Dr. Chicoine as provided by SDCL 1-26-18.  The
> Department feels that further testimony of these experts is
> necessary to decide when an ascertainable loss occurred.  At the

---

[10] Again, as explained above, the DOL's letter decision is dated April 3, 2017 but that is clearly a typographical error.

full hearing, should the Department find that Insurer prematurely
ended benefits, it may retroactively award further TTD benefits as
well as prejudgment interest pursuant to SDCL 54-3-4.

Id. at p. 5.

The DOL stated in its order that it would reconsider the proper

termination of TTD benefits at the full evidentiary hearing.  Id.  As explained

above, it is unclear to this court whether or when a full evidentiary hearing

before the DOL ever occurred.  It is clear is that the parties eventually

submitted a compromise settlement agreement to the DOL for approval.

Docket No. 25-22.

To summarize:  in the fall of 2017, during the pendency of Mr. Johnson's

petition for hearing before the DOL (which was filed on October 27, 2016)

Mr. Johnson's own treating physicians disagreed about whether he was at MMI

(i.e. whether an ascertainable loss had occurred).  Dr. Janssen stated

Mr. Johnson was at MMI but Dr. Chicoine stated Mr. Johnson was not at MMI.

The IME physician (Dr. Ripperda) stated Mr. Johnson was at MMI.  The DOL

twice refused to give the parties any advice or make a ruling about whether

Acuity's switch from TTD benefits to PPD benefits was premature until a full

hearing on all the issues was held. None of these facts are in dispute.

"An insurance company is entitled to challenge claims which are fairly

debatable and will be found liable only where it has intentionally denied a

claim without a reasonable basis."  Mudlin, 742 N.W.2d at 52 (cleaned up).

Based upon the opinions of Dr. Ripperda and Dr. Janssen that Mr. Johnson

had reached MMI, Acuity had an articulable and reasonable basis to switch

32

Mr. Johnson's benefits from TTD benefits to PPD benefits, at least pending the outcome of his petition for hearing before the DOL—even if that reason was ultimately wrong.  Id. at 54.  This is essentially what the DOL told the parties in its ruling on Mr. Johnson's motion to reinstate benefits (Docket No. 25-25). "The insurer is still authorized to challenge claims that are fairly debatable . . . and the insurer does not act tortuously if it acts upon a permissible, albeit mistaken, belief that the claim is not compensable."  Id. (cleaned up).  That the denial may have ultimately been found to be erroneous does not mean it was in bad faith.  Id.

For these reasons, this court concludes Mr. Johnson has failed to create a genuine issue of fact to show that Acuity made its decision to terminate TTD benefits (1) with no reasonable basis; and (2) that by accepting Dr. Ripperda's opinion instead of Dr. Chicoine's opinion, Acuity acted with knowledge or a reckless disregard as to the lack of a reasonable basis for the denial of benefits. Bertelsen, 833 N.W.2d at 554.  Mr. Johnson's claim for further TTD benefits was "fairly debatable."  This court therefore recommends that Acuity's motion for summary judgment as to Mr. Johnson's bad faith claim be GRANTED.

### 3.    Mr. Johnson's Claim for Intentional Infliction of Emotional Distress

Acuity moves for summary judgment on Count II of Mr. Johnson's complaint (intentional infliction of emotional distress).  As this court interprets Mr. Johnson's complaint, each of the claims in addition to the bad faith claim assumes the bad faith claim survives summary judgment.  In other words, Mr. Johnson's bad faith claim forms the underpinning for his claim of

intentional infliction infliction of emotional distress.  For example, Count II, ¶ 49, which describes in part the factual basis for Mr. Johnson's intentional infliction claim, states "[Acuity] knew, or in the exercise of reasonable care should have known, that its behavior and action in the denial of benefits, and subsequent handling of this claim would result in serious emotional distress to the plaintiff due to his medical and financial position." See Docket 1, p. 6, ¶ 49.

Because this court has recommended that Acuity's motion for summary judgment on the bad faith claim be granted, so too should its motion be granted as to the intentional infliction of emotional distress claim.  In the event a reviewing court disagrees that the claims are intertwined in this fashion, however, the court analyzes the intentional infliction claim separately below.

In South Dakota, the elements of an intentional infliction of emotional distress claim are:  (1) an act by the defendant amounting to extreme and outrageous conduct; (2) intent on the part of the defendant to cause the plaintiff severe emotional distress; (3) the defendant's conduct was the cause-in-fact of plaintiff's distress; and (4) the plaintiff suffered an extreme disabling emotional response to defendant's conduct.  Estate of Johnson by and through Johnson v. Weber, 898 N.W.2d 718, 726 (S.D. 2017).  "The question whether the defendant's conduct was extreme and outrageous is initially for the court. Proof under this tort must exceed a rigorous benchmark." Id. (cleaned up). And, "for conduct to be outrageous, it must be so extreme in degree as to go

beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. (cleaned up).

Acuity asserts Mr. Johnson's "unclean hands" precludes recovery under a theory of intentional infliction of emotional distress. See Docket No. 19, p. 14 (citing Adrian v. McKinnie, 639 N.W.2d 529, 535 (S.D. 2002). This argument is based upon Acuity's theory that Mr. Johnson took inconsistent positions before the DOL and this court—a theory this court has rejected for the reasons explained on pages 20-25 of this opinion, above.

As a matter of law, however, Acuity's conduct in discontinuing Mr. Johnson's TTD benefits does not rise to the level of intentional infliction of emotional distress. Acuity did not discontinue the TTD benefits until one of Mr. Johnson's own treating physicians opined he had reached MMI, and then Acuity procured an opinion from an IME physician who also opined Mr. Johnson was at MMI and who assigned a 3% impairment rating—which impairment rating Acuity paid out to Mr. Johnson. This course of conduct followed the procedure outlined by the South Dakota worker's compensation statutes (explained in more detail above), so it cannot by any stretch of the imagination be deemed "beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Estate of Johnson, 898 N.W.2d at 726. This court recommends that Acuity's motion for summary judgment as to the intentional infliction of emotional distress cause of action be GRANTED.

**4.    Mr. Johnson's Claim for Conversion.**

Acuity moves for summary judgment on  Count III of Mr. Johnson's complaint (Conversion).  Again, as this court interprets Mr. Johnson's complaint, in order for his conversion claim to survive, so too must his bad faith claim survive summary judgment.  The key paragraph in Count III which demonstrates this is ¶ 54 which states:  "[Acuity] exerted unauthorized control or dominion over the property of [Johnson], by the above described conduct, in a way that reject[ed] and denied [Johnson's] right to his benefits, or in a manner inconsistent with [Johnson's] rights."  See Docket 1, ¶ 54.

Because this court has recommended that Acuity's motion for summary judgment on the bad faith claim be granted, so too should its motion be granted as to the conversion claim, without further analysis.  In the event a reviewing court disagrees that the claims are intertwined in this fashion, however, the court analyzes the conversion claim separately below.

In its brief, Acuity again bases its summary judgment argument regarding conversion solely upon its theory that Mr. Johnson has taken inconsistent positions before the DOL and this court.  But this court has rejected that theory for the reasons explained on pages 20-25 of this opinion, above.  Instead, the court analyzes the merits of Mr. Johnson's conversion claim.

The law of South Dakota provides, "conversion is the unauthorized exercise of control or dominion over personal property in a way that repudiates an owner's right in the property or in a manner inconsistent with such right."

36

Underhill v. Mattson, 886 N.W.2d 348, 355 (S.D. 2016).  The court is skeptical that failure to immediately pay the full amount of legitimately disputed worker's compensation benefits ultimately determined to be owed could ever fit the definition of conversion.  Though Mr. Johnson has cited several cases which he asserts stand for such a proposition, none of those cases so hold.

Mr. Johnson cites Cooper v. Hawaii, 2019 WL 2552766  at *2 (D. Haw., June 20, 2019).  But Cooper is not a worker's compensation bad faith case.  In fact, it is not a bad faith case at all.  Id.  He also cites Fitzgerald v. Bestway Services, Inc., 284 F. Supp. 2d 1311, 1313 (N.D. Ala. 2003).  While that case did involve a worker's compensation bad faith claim, it did not touch upon the merits of whether such a claim could form the foundation of a conversion claim.  Id.  Instead, the opinion of the Northern District of Alabama district court discussed which of the plaintiff's claims were properly removed from state court and which should be remanded to state court.  Id. at 1314.

Mr. Johnson cites Hough v. Pacific Ins. Co., 927 P.2d 858, 862 (Haw., 1996).  That case discussed the exclusivity of Hawaii's worker's compensation remedies.  Id. at 864.  Though the lower court had granted summary judgment to the defendant on the plaintiff's conversion claim, the Supreme Court of Hawaii did not explicitly discuss whether a claim for conversion could be brought for the bad faith denial or delay in payment of worker's compensation benefits.  Id.

Finally, Mr. Johnson cites Vigue v. Evans Products Co., 608 P.2d 488, 489 (Mont. 1980).  Again, that case analyzes merely whether tort claims

(including bad faith claims and conversion) may be brought by the employee against the employer, or whether worker's compensation claims are the exclusive remedy.  Id.  Vigue was an appeal from an order dismissing the complaint for failure to state a claim upon which relief could be granted.  Id. Vigue did not discuss the merits of a conversion claim for the bad faith denial or delay in payment of worker's compensation benefits.   Id.

Mr. Johnson's conversion theory fails.  Even accepting that Acuity ultimately was deemed by the DOL (via the approval of the compromise agreement) to owe Mr. Johnson more worker's compensation benefits than Acuity initially paid him, Acuity's exercise or control over those benefits during the pendency of the worker's compensation proceedings was not unauthorized. Underhill, 886 N.W.2d at 355.  This is because, as explained above, Acuity followed the statutory procedure for obtaining an impairment rating after two physicians indicated Mr. Johnson's loss had become ascertainable (i.e. that he had reached  MMI), and thereafter terminated his TTD benefits in favor of PPD benefits.

It is also for this reason that Mr. Johnson's case differs from Hurley v. State Farm Ins., 2012 WL 6012803 at *4, n.3 (D.S.D., Dec. 3, 2012).  Hurley arose in the context of the right to recover attorney's fees.  Id.  In that case, the district court noted an insurer's failure to pay policy benefits is "similar" to conversion when the insured successfully recovers the benefits through a breach of contract action, because in that instance the insured had a right to possess the insurance proceeds all along.  Id.

But the Hurley court qualified its statement by noting recovery of the insurance benefits in a pure breach of contract action was not enough: the insured must also show the insurer failed to pay in bad faith. Id. Therein lies the rub for Mr. Johnson, because this court has explained in section C.2 above that Acuity is entitled to summary judgment in its favor as to the bad faith claim.

For these reasons, this court recommends that Acuity's motion for summary judgment as to Count II of Mr. Johnson's complaint (the conversion claim) be GRANTED.

### 5.    Mr. Johnson's Claim for Unfair and Deceptive Trade Practices.

Acuity moves for summary judgment on Count IV of Mr. Johnson's complaint (Unfair and Deceptive Insurance Practices). Though this count of Mr. Johnson's complaint also incorporates by reference all of his factual allegations of bad faith (see Docket 1, ¶¶ 59-60) it also articulates an intention to rely upon South Dakota's Unfair Trade Practices Act (SDCL Chapter 58-33). Mr. Johnson specifically cites SDCL § 58-33-67: Unfair or Deceptive Practices in Dealing with Insureds. That portion of the Unfair Trade Practice Act's statutory provision, however, is self-limiting. SDCL § 58-33-69 states, "[n]othing in §§ 58-33-66 to 58-33-69, inclusive, grants a private right of action." By the clear terms of the Act, Mr. Johnson is not entitled to bring a private cause of action for unfair or deceptive insurance practices. The court therefore recommends that Acuity's motion for summary judgment as to Count

IV of Mr. Johnson's complaint (the Unfair and Deceptive Insurance Practices claim) be GRANTED.

### 6.    Mr. Johnson's Claim for Attorney's Fees.

Acuity moves for summary judgment on Count V of Mr. Johnson's complaint (Attorney's fees).  This portion of Mr. Johnson's complaint again refers to SDCL Chapter 58.  Specifically, Mr. Johnson asserts Acuity's denial of "full payment of benefits owed pursuant to [Mr. Johnson's] underinsured motorist claim (sic) was made vexatiously and without reasonable cause" entitling him to an award of attorney's fees pursuant to SDCL § 58-12-3.

SDCL § 58-12-3 provides that attorney's fees may be awarded against an insurance company if it appears that such insurance company has refused to pay the full amount of loss and that such refusal was "vexatious, or without reasonable cause."  Id.  In Tripp v. Western Mutual Insurance Company, 664 F.3d 1200, 1206 (8th Cir. 2011) the Eighth Circuit held that attorney's fees under this statute may be awarded even if the plaintiff's bad faith claim is *not* successful.  Id.  This is because the statute does not require a jury to find an insurer committed the tort of bad faith before a court may find the insurer acted vexatiously or without reasonable cause by refusing to pay a contract claim.  Id.  Second, vexatiousness is not an element of a bad faith claim.  Id. Finally, different purposes are served by a jury verdict on a bad faith claim and a court's award of fees on a contract claim under SDCL § 58-12-3.  A bad faith claim is tortious in nature and intended to punish an insurer to deter future bad acts and compensate a claimant for the loss of damages caused by the bad

faith conduct.  Id.  In contrast, § 58-12-3 only applies to contract claims and is remedial in nature.  It is designed to compensate the claimant who incurred legal expenses because he was forced to resort to litigation to obtain benefits. Id.  Therefore, the court reasoned that an award of attorney's fees under § 58-12-3 is not dependent on a finding of bad faith conduct by the insurance company.  Id.

Acuity asserts that Mr. Johnson's claim for attorney's fees is barred by waiver and estoppel, based upon his inconsistent claims before the DOL and this court.  For the reasons already explained, this court will not recommend denial of  Mr. Johnson's claim for attorney's fees on that basis.  See, section C.1 of this opinion, above.  Nevertheless, and independently of the bad faith determination, this court does not find Acuity's conduct in this case to be unreasonable or vexatious pursuant to SDCL § 58-12-3.

First, Mr. Johnson was not forced resort to litigation because of Acuity's actions.  Mr. Johnson had initiated litigation (his petition for hearing before the DOL) nearly a year before Acuity moved to terminate TTD benefits.  Though it is unclear when Mr. Johnson retained counsel to represent him, the litigation had commenced long before Acuity's actions which Johnson asserts were vexatious and unreasonable.

Second, "where there are open questions of fact or law determinative of the insured's liability, the insurer, acting in good faith, may insist on judicial determination of such questions without subjecting itself to penalties for vexatious refusal to pay."  Howie v. Pennington County, 563 N.W.2d 116, 119

(S.D. 1997).  Howie was a worker's compensation case in which the claimant sought recovery of her attorney's fees after the insurer refused to pay certain benefits prior to a full hearing before the DOL.  Id. at 118.  After the hearing, she requested her attorney's fees pursuant to SDCL § 58-12-3, but he DOL denied her request, and the circuit court affirmed.  Id.  The South Dakota Supreme Court affirmed, finding there were several issues legitimately in dispute, which the insurer was entitled to insist be decided at the hearing before the DOL.  Id. at 120.

> This is not a case where insurers claim the employee is entitled to no benefits, but is a case where the dispute revolves around the amount of benefits to be paid and whether there should be a lump-sum payment.  To hold an insurer acted in bad faith or vexatiously in exercising its right to a hearing on a dispute such as involved in this case would certainly have a chilling effect on a person's right to request a decision from Department on legitimate disputes over amounts due.

Id.

The same is true in Mr. Johnson's case.  Acuity did not claim Mr. Johnson was entitled to no disability benefits.  It paid TTD benefits for a period of time, until one of his own physicians opined he was at MMI.  When the IME physician agreed, Acuity obtained the impairment rating and, consistent with South Dakota's worker's compensation statutes, switched Mr. Johnson's payments to PPD benefits until such time as his impairment rating was paid in full.

Mr. Johnson's petition for hearing before the DOL had already been filed by him before Acuity took any of these actions, and it remained pending with the DOL after these actions were completed.  That Dr. Chicoine disagreed with

42

Dr. Ripperda's determination Mr. Johnson was at MMI and was therefore no longer entitled to TTD benefits merely added one more issue to be determined by the DOL at the hearing.  As the DOL explained in its April 3, 2018, letter decision, both Acuity and Mr. Johnson were entitled to be heard on matters upon which the parties could not come to an agreement pursuant to SDCL § 62-7-33.  See Docket No. 25-25 at p. 4.  That Acuity exercised its right to challenge Dr. Chicoine's opinion, even if Acuity was ultimately wrong, should not subject it to payment of Mr. Johnson's attorney's fees under SDCL § 58-12-3.   For these reasons, the court recommends Acuity's motion for summary judgment as to Count V (Attorney's Fees) be GRANTED.

### 7.    Mr. Johnson's Claim for Punitive Damages.

Acuity moves for summary judgment on Count VI of Mr. Johnson's complaint (Punitive Damages).  Again, Acuity relies upon its theories of estoppel and waiver, arguing that Mr. Johnson has taken differing positions before the DOL and this court.  The court does not adopt those arguments as reasons to grant summary Acuity's motion for summary judgment as to Mr. Johnson's punitive damages claim.

A plaintiff claiming punitive damages in South Dakota must show "that the defendant has been guilty of oppression, fraud, or malice, actual or presumed." Berry v. Time Ins. Co., 798 F. Supp. 2d 1015, 1022 (D.S.D. 2011). However, punitive damages is not an independent cause of action.  Id.  In other words, punitive damages may only be awarded if the plaintiff prevails on the underlying cause of action, and *then* proves the elements required to recover

punitive damages.  <u>Daughetee v. CHR Hansen, Inc.</u>, 960 F. Supp. 2d 849, 879

(N.D. Iowa 2013).  Because this court has recommended  summary judgment

be granted in favor of Acuity as to Mr. Johnson's underlying bad faith claim,

the court does not reach the merits of punitive damages claim.  The court

recommends Acuity's motion for summary judgment as to Count VI of

Mr. Johnson's complaint be GRANTED.

**D.    Mr. Johnson's Request for Rule 56(d) Continuance.**

Finally, in his brief, Mr. Johnson asks that the court order a continuance

or in the alternative deny Acuity's motion for summary judgment to allow him

time to conduct more discovery under FED. R. CIV. P. 56(d).  That rule provides:

> **(d) When Facts Are Unavailable to the Nonmovant.**  If a
> nonmovant shows by affidavit or declaration that, for specified
> reasons, it cannot present facts essential to justify its opposition,
> the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take
> discovery; or
> (3) issue any other appropriate order.

<u>See</u> FED. R. CIV. P. 56(d).

In support of his request, Mr. Johnson's counsel has submitted an

affidavit in which he states he has received 6,302 pages of Acuity's discovery

responses (Docket 25, ¶ 1).[11]  Counsel explains he wishes to depose the Acuity

claims adjuster who handled Mr. Johnson's file, and the claims supervisor to

"provide evidence concerning Acuity's handling of [Mr. Johnson's] worker's

compensation claim."  <u>Id.</u>, ¶ ¶4-6.  Counsel further explains this additional

---

[11] This document is an affidavit of counsel, so it qualifies as an appropriate
document under Rule 56(d).

discovery will "develop Acuity's claims practices," and that "allowing the parties to complete discovery will "defeat [Acuity's] motion for summary judgment." Id., ¶¶ 8-9.

"As a general rule, summary judgment is proper only after the nonmovant has had adequate time for discovery." Hamilton v. Bangs, McCullen, Butler & Foye, LLP, 687 F.3d 1045, 1049 (8th Cir. 2012) (cleaned up). This prevents a "party from being unfairly thrown out of court by a premature motion for summary judgment." Id. (cleaned up).

A request for Rule 56(d) continuance is not automatically granted when a supporting affidavit is submitted. The party seeking the Rule 56(d) continuance "must do more than simply assert he may discover additional facts, and must do more than speculate about what those facts might be." Fraserside IP, LLC v. Youngtek Solutions, LTD., 2012 WL 2906462 at *2 (N.D. Iowa, July 16, 2012) (cleaned up). Instead, party requesting Rule 56(d) relief must "demonstrate specifically how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the showing of the absence of a genuine issue of material fact." Id. The party "may not rely on vague assertions that additional discovery will produce needed, but unspecified facts." Id. The requesting party need not be clairvoyant, but the movant is "required to state with some precision the materials he hopes to obtain with further discovery, and exactly how he expects those materials would help him in opposing summary judgment." Id. (cleaned up). It is not enough to simply assert that "something will turn up." Id. (cleaned up).

45

Measured against the standards articulated above, Mr. Johnson has failed to meet the necessary Rule 56(d) standard.  Though he wishes to depose the claims adjuster and supervisor, he has not explained what specific facts he hopes to learn that will prove the discontinuance of his TTD benefits in favor of PPD benefits during the pendency of his petition for hearing before the DOL was not  "fairly debatable."  In Hamilton, a case arising out of the Western Division of South Dakota, the Eighth Circuit affirmed the denial of a Rule 56(d) motion for continuance, when counsel's affidavit merely stated, "no depositions had yet taken place" and "this additional discovery will further bolster and support plaintiff's claims and raise additional disputed facts that would defeat defendant's motion."  Hamilton, 687 F.3d at 1050.  That is essentially what counsel has provided in support of Mr. Johnson's motion here.  See Docket 25, ¶ 9 ("It is believed that allowing parties to complete discovery will defeat [Acuity's] motion for summary judgment.").[12]  In other words, "something will turn up."  That is an insufficient showing under Rule 56(d) to delay ruling on Acuity's motion.  Fraserside IP, LLC  2012 WL 2906462 at *2.

For these reasons, the court recommends that Mr. Johnson's motion for an order denying Acuity's motion for summary judgment, or in the alternative for a continuance to allow further discovery under  FED. R. CIV. P. 56(d), be DENIED.

---

[12] As explained above, there are a handful of other paragraphs in the affidavit which state that counsel wishes to depose the claims adjuster and supervisor. But those paragraphs are equally devoid of any *specific facts* that counsel expects to uncover which might defeat summary judgment in favor of Acuity.

## CONCLUSION

For the reasons more fully explained above, the court respectfully recommends that defendant's motion for summary judgment (Docket No. 18) be GRANTED) and that Plaintiff's request for Rule 56(d) discovery (Docket No. 23 and 25) be DENIED.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.  <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir. 1990); <u>Nash v. Black</u>, 781 F.2d 665 (8th Cir. 1986).

DATED this 3rd day of December, 2019.

BY THE COURT:

_____
VERONICA L. DUFFY
United States Magistrate Judge