UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| LLOYD CURTIS JOHNSON,<br><br>     Plaintiff,<br><br> vs.<br><br>ACUITY MUTUAL INSURANCE<br>COMPANY,<br><br>     Defendant. | CIV. 18-5076-JLV<br><br><br>ORDER |

## INTRODUCTION

Plaintiff Lloyd Curtis Johnson brought this diversity action against defendant Acuity Mutual Insurance Company alleging it denied his workers' compensation benefits in bad faith. (Docket 1). Plaintiff further alleges defendant committed unfair and deceptive insurance practices, intentionally inflicted emotional damage and converted his benefits. Id. In addition to general damages, plaintiff also asks for attorney's fees and punitive damages. Id. Defendant moved for summary judgment on all counts. (Docket 18). Plaintiff responded to defendant's summary judgment on the merits, but also asserts additional discovery is needed under Federal Rule of Civil Procedure 56(d). (Docket 23).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and the court's standing order of October 16, 2014, the court referred the motions to Magistrate Judge Veronica L. Duffy for a report and recommendation ("R&R"). (Docket 39). The magistrate

judge recommended granting summary judgment to defendant on all counts and denying additional discovery. (Docket 40). Plaintiff objected to the R&R and defendant responded to the objections. (Dockets 44 & 45). For the reasons given below, the court overrules the objections, adopts the R&R as modified by this order and grants summary judgment in full to defendant.

## I. Plaintiff's Objections

Plaintiff raises one factual objection and five legal objections. As summarized by the court, plaintiff argues the magistrate judge erred by:

1. Finding Dr. Christopher Janssen placed defendant at maximum medical improvement ("MMI") on August 23, 2017. (Docket 43 at pp. 2-4).

2. Concluding defendant's decision to deny benefits was not unreasonable as a matter of law. Id. at pp. 7-13.

3. Dismissing plaintiff's intentional infliction of emotional distress claim without allowing Rule 56(d) discovery. Id. at pp. 13-14, 18-20.

4. Dismissing plaintiff's conversion claim. Id. at pp. 14-16.

5. Dismissing plaintiff's unfair and deceptive trade practices claim. Id. at pp. 16-17.

6. Concluding plaintiff could not recover attorney's fees. Id. at pp. 17-18.

The court, reviewing the R&R de novo, overrules each objection in turn. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

## II. Facts

The magistrate judge comprehensively laid out the facts of this case in the R&R. (Docket 40 at pp. 2-12). The court recites only the facts necessary to

2

resolve plaintiff's objections. These facts are viewed in the light most favorable to plaintiff, the nonmoving party. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 (1986).

In 2016, plaintiff was employed by Midwest Construction. (Docket 22-5). On March 28, 2016, plaintiff fell off a ladder at a job site in Ft. Pierre, South Dakota. (Docket 22-1). He landed on his right hip. <u>Id.</u> Plaintiff reported to Avera St. Mary's hospital in Pierre, South Dakota, on April 14 complaining of pain in his lower back, right buttock and right leg. (Docket 22-2). He received treatment for the injury from a number of doctors, including Dr. Daniel Rasmussen. (Dockets 25-1 – 25-4, 25-6 & 25-8). On September 7, Dr. Rasmussen certified to defendant's case management company that plaintiff reached MMI and had no further work restrictions related to the March 28 injury.[1] (Docket 22-6). On October 27, plaintiff petitioned the South Dakota Department of Labor ("DOL") for a hearing and an award of workers' compensation benefits. (Docket 28-2).

---

[1]Plaintiff objects to consideration of Dr. Rasmussen's September MMI determination as irrelevant because of the December fall. (Docket 24 at ¶ 6). The determination provides relevant background information for the December fall. In general, if the court recites a fact subject to a relevance objection, the objection is overruled.

On December 21, plaintiff fell down a flight of stairs while on the job. (Docket 22-7). He consulted his family doctor, Noel Chicoine, the next day.[2] Id.; see also Docket 22-4 at pp. 2, 11. Dr. Chicoine referred plaintiff for physical therapy, an MRI and a consult with Dr. Bryan Wellman, a spinal neurosurgeon.[3] (Docket 22-4 at p. 12). After these steps apparently yielded no relief, plaintiff consulted with Dr. Christopher Janssen, an interventional physiatrist specializing in non-surgical spinal care. Id. at pp. 13-14. On March 22, 2017, Dr. Janssen noted he was "not able to explain [plaintiff's] right sided hip and low back pain." Id. at p. 14. Dr. Janssen recommended further therapy and testing, but noted if these measures were not successful, he would consider ordering a functional capacity evaluation and finding plaintiff at MMI. Id.

Dr. Janssen and Dr. Chicoine continued to treat plaintiff throughout 2017. Id. at pp. 15-16. Dr. Janssen again considered ordering a functional capacity evaluation and making an MMI finding on April 26. Id. at p. 15. Dr. Chicoine wrote he did not "have an answer . . . as to whether [plaintiff] is likely to recover or not" on May 10. Id. On June 14, Dr. Janssen recommended an

---

[2]Much of this recitation of defendant's treatment history following his December fall is taken from Dr. Thomas Ripperda's independent medical evaluation ("IME"), dated September 11, 2017. See Docket 22-4. Although plaintiff attacks the IME on other grounds, he concedes it accurately recites his treatment history. (Docket 24 at ¶¶ 8-9).

[3]All descriptions of the doctors' specialties are taken from the websites of their medical groups. See Find a Doctor, Sanford Health, available at https://www.sanfordhealth.org/doctors (last visited March 17, 2020); see also Find a Doctor, Avera, available at https://www.avera.org/doctors/ (last visited March 17, 2020).

epidural steroid injection for plaintiff's neck and arm pain, but deferred to Dr. Chicoine as to his right buttock and hip pain. (Docket 44-1). Dr. Edward Czarnecki, a neuroradiologist, performed the injection on July 6. (Docket 25-11). Plaintiff "did not respond" to the injection. (Docket 22-4 at p. 17). Aside from the injection, Dr. Chicoine noted Dr. Janssen had "nothing else" to offer. Id. at p. 16. On August 25, Dr. Janssen evaluated plaintiff "for recheck . . . regarding his cervical spine" and found plaintiff at MMI. (Docket 22-8).

Dr. Chicoine did not believe plaintiff had reached MMI. On November 9, Dr. Chicoine recorded his finding in a medical note and in a letter—addressed to "whom it may concern"—stating plaintiff was "totally disabled" and the disability was "likely to be permanent." (Dockets 25-15 & 25-17). On November 30, Dr. Chicoine opined plaintiff may need a "multi specialty evaluation at a major Medical Center" outside South Dakota.[4] (Docket 25-18) In the same note, Dr. Chicoine wrote plaintiff's prior "numerous evaluations" and "physical therapy and several injections" had failed to alleviate his symptoms. Id. In letters dated December 20 and January 2, 2018, Dr. Chicoine affirmed his opinion that

---

[4]In his objections to the R&R, plaintiff asserts Dr. Chicoine referred him for an evaluation at the Mayo Clinic and that defendant approved the referral on December 20, 2017. (Docket 43 at p. 6). Plaintiff did not support these facts with record evidence and the court does not consider them. Fed. R. Civ. P. 56(e)(4).

plaintiff was "temporarily totally disabled" and "awaiting an evaluation at a major medical center for a complete evaluation."[5]   (Dockets 25-19 & 25-20).

Defendant referred plaintiff to Dr. Ripperda for an IME.   (Docket 20 at ¶ 13).   Dr. Ripperda specializes in physical medicine, rehabilitation and physiatry.   He concluded defendant's March and December accidents contributed to the pain plaintiff experienced in his neck, cervical spine, right buttock, hip, right calf and lower back.   (Docket 22-4 at pp. 17-21).   However, Dr. Ripperda also concluded there were no further medical interventions which could treat plaintiff's symptoms.[6]   Id.   He relied on the evident failure of prior interventions, "the number of physicians" plaintiff had consulted, and the failure of testing to show any "specific structural abnormality that could be treated" in concluding further intervention was unwarranted.   Id. at p. 21.   Dr. Ripperda found plaintiff was at MMI and calculated a 3 percent whole person impairment rating.   Id. at p. 24.

On October 3, 2017, defendant filed a motion in the DOL to terminate plaintiff's temporary total disability ("TTD") benefits and to pay out his permanent partial disability ("PPD") rating.   (Docket 22-9).   It noted none of plaintiff's treating doctors—including Dr. Chicoine—were recommending any specific additional treatment.   Id. at ¶¶ 7, 10.   Plaintiff resisted the motion on

---

[5]The record does not contain the results of this evaluation, if indeed it took place.

[6]Dr. Ripperda noted plaintiff "was not very forthcoming with descriptions of his symptoms," which hindered him from evaluating whether previous interventions had been effective.   (Docket 22-4 at p. 21).

jurisdictional grounds, arguing defendant was seeking "an advisory opinion regarding the reasonableness of its actions[,]" "seeking to cover itself in the event that it is sued for bad faith."   (Docket 22-11 at pp. 8-9).   Plaintiff argued defendant was not required "to gain approval from the [DOL] prior to terminating . . . benefits."   <u>Id.</u> at p. 9.   On December 4, the DOL issued a letter decision agreeing with plaintiff.   (Docket 22-12).   Because plaintiff did not contest defendant's right to terminate TTD benefits, the DOL found itself without jurisdiction to determine whether termination was appropriate.   <u>Id.</u> at p. 4.

On December 19, defendant terminated plaintiff's TTD benefits.   (Docket 22-13).   Defendant's termination letter gave no reasons.   <u>Id.</u>   Defendant also refused to pay any PPD benefits, asserting that plaintiff was only entitled to $6,273.54 while it had already paid $8,043 in TTD benefits.   <u>Id.</u>

Plaintiff moved the DOL to force defendant to reinstate his TTD benefits on February 20, 2018.   (Dockets 25-23 & 25-24).   He asserted his treating physician, Dr. Chicoine, had not yet placed him at MMI.   (Docket 25-24 at pp. 8-10).   Accordingly, plaintiff argued his PPD benefits could not be calculated and paid out.   <u>Id.</u> at p. 10.   On April 4, the DOL denied plaintiff's motion, reasoning that the parties needed time to depose Dr. Chicoine and Dr. Ripperda to provide an evidentiary basis for it to determine if plaintiff had reached MMI.[7] (Docket 25-25 at p. 5).   The DOL deferred its ruling until a full evidentiary

---

[7]The DOL's letter order is dated April 4, 2017, but, as the magistrate judge noted, this is clearly a typographical error.   (Docket 40 at p. 9 n.5).

hearing could be held.   Id.   However, the parties settled plaintiff's workers'

compensation claim at some point before June 29, when the DOL approved the

settlement.[8]   The record contains no indication an evidentiary hearing was ever

held.

Plaintiff filed this action on October 31.

## III.   Legal Standards

South Dakota law governs this diversity action.   O'Neal v. Remington

Arms Co., LLC, 817 F.3d 1055, 1060 (8th Cir. 2015).

### A.   Summary judgment

Under Federal Rule of Civil Procedure 56(a), a movant is entitled to

summary judgment if the movant can "show that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).   Once the moving party meets its burden, the nonmoving

party may not rest on the allegations or denials in the pleadings, but rather must

produce affirmative evidence setting forth specific facts showing that a genuine

issue of material fact exists.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256

(1986).   Only disputes over facts which might affect the outcome of the case

under the governing substantive law will properly preclude summary judgment.

Id. at 248.   "[T]he mere existence of *some* alleged factual dispute between the

parties will not defeat an otherwise properly supported motion for summary

---

[8]The parties did not place the settlement agreement in the record.

judgment; the requirement is that there be no *genuine* issue of *material* fact."
Id. at 247-48 (emphasis in original).

If a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, then summary judgment is not appropriate. Id. However, the moving party is entitled to judgment as a matter of law if the nonmoving party failed to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In such a case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

In determining whether summary judgment should issue, the facts and inferences from those facts must be viewed in the light most favorable to the nonmoving party. Matsushita, 475 U.S. at 587-88 (1986). The key inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

### B. South Dakota workers' compensation

South Dakota workers' compensation statutes allow an employee to "recover for all injuries arising out of and in the course of employment, regardless of any actionable fault upon the part of the employer." Steinberg v. S.D. Dep't. of Military and Veterans Affairs, 607 N.W.2d 596, 605 (S.D. 2000).

They are intended "to provide an injured employee with a remedy which is both expeditious and independent of proof of fault." <u>Id.</u> (emphasis removed).

An employee is temporarily disabled from the date of injury until he "attains complete recovery or until a specific loss becomes ascertainable, whichever comes first." SDCL § 62-1-1(8). A loss is ascertainable "when it becomes apparent that permanent disability and the extent thereof has resulted from an injury and that the injured area will get no better or no worse because of the injury[.]" <u>Id.</u> at § 62-1-1(2). The point at which a loss is ascertainable is referred to as MMI. An employee is entitled to TTD benefits equal to approximately 2/3 of his regular wages, but no more than the average South Dakota weekly wage, for the period between his injury and MMI. <u>Id.</u> at § 62-4-3.

While South Dakota statutes do not specify who may terminate TTD benefits, it does provide that temporary disability—and the concomitant benefits—ends when the loss is ascertainable; that is, at MMI.[9] <u>Id.</u> at §§ 61-1-1(2), (8). An employer may compel an employee seeking benefits to submit to an IME to determine whether MMI has been reached. <u>Id.</u> at § 62-7-1. At MMI, a "medical impairment rating"—also known as a whole person impairment rating—is assigned to the employee. <u>Id.</u> at § 62-1-1.2. The impairment rating is used to calculate the PPD payout. <u>Id.</u> at § 62-4-5. PPD benefits are paid if the employee "becomes partially incapacitated from pursuing

---

[9]A statute does permit an employer to use certain testing to "determin[e] permanent partial or permanent total disability compensation due to an employee[,]" suggesting the employer may terminate benefits. SCDL § 62-7-39.

[his] usual and customary line of employment" or "if the employee has been released by [his] physician from temporary total disability[.]" Id. If the employer and employee cannot agree on benefits, the DOL is permitted to resolve the matter upon petition of a party. Id. at §§ 62-7-12, 13.

### C. Workers' compensation bad faith

"[I]n South Dakota, a workers' compensation claimant can sustain an action for bad faith against an insurer only if . . . . [t]here [is]: (1) an absence of a reasonable basis for denial of policy benefits and (2) the insurance carrier's [lack of] knowledge or reckless disregard of a reasonable basis for denial[.]" Hein v. Acuity, 731 N.W.2d 231, 236 (S.D. 2007) (internal quotations and citations omitted). "[W]orkers' compensation bad faith will not arise whenever an insurer's conduct toward a claimant is unreasonable. . . . An insurer is liable to a claimant *only* when it has intentionally denied (or failed to process or pay) a claim without a reasonable basis." Id. at 237 (internal citations omitted) (emphasis in original).

"Insurers are entitled to challenge fairly debatable claims." Id. "The questions of whether the insurer's actions were unreasonable or whether the claim was fairly debatable must be viewed at the time the insurer made the decision to deny or litigate the claim, rather than pay it." Blanchard v. Mid-Century Ins. Co., 933 N.W.2d 631, 637 (S.D. 2019) (internal quotation omitted) (emphasis omitted). "That the denial was eventually found to be erroneous does not mean the denial was in bad faith." Mudlin v. Hills Materials

11

<u>Co.</u>, 742 N.W.2d 49, 54 (S.D. 2007).   "The question of whether an insurer has acted in bad faith is generally a question of fact."   <u>Blanchard</u>, 933 N.W.2d at 637 (internal quotation omitted).

## IV.   Analysis

### A.   Janssen MMI finding

Plaintiff's first objection argues the magistrate judge erred by finding as a fact that Dr. Janssen placed him at MMI on August 23, 2017.   (Docket 43 at pp. 2-4).   He asserts Dr. Janssen only treated his cervical spine pain and deferred treatment of the rest of his pain to Dr. Chicoine.   <u>Id.</u> at pp. 3-4.   Dr. Janssen's MMI determination, in plaintiff's view, did not apply to his lower back, hip and leg injuries.

Contrary to plaintiff's argument, Dr. Janssen did not treat plaintiff only for his cervical spine pain.   Plaintiff's treatment history recounted in Dr. Ripperda's IME shows that Dr. Janssen evaluated plaintiff's hip on March 1, 2017, recommended an MRI and considered an intraarticular hip injection.   (Docket 22-4 at p. 13).   The MRI was evidently conducted on March 7, but the record does not indicate whether the hip injection occurred.   <u>Id.</u>   During March 22 and April 12 consultations, Dr. Janssen continued to investigate plaintiff's right hip, buttock and lower back pain.   <u>Id.</u> at pp. 14-15.   In his medical notes following the March 22 consultation, Dr. Janssen noted he was "not able to explain [plaintiff's] right sided hip and low back pain."   <u>Id.</u> at p. 14.

Plaintiff is correct that Dr. Janssen referred him back to Dr. Chicoine on June 14 "for the right buttock and hip area[,]" because of his "relationship with Dr. Chicoine[.]" (Docket 44-1). On August 23, Dr. Janssen noted plaintiff had been "seeing Dr. Chicoine for his right-sided buttock and leg pain." (Docket 22-8 at p. 1). However, that same medical note also records Dr. Janssen reviewing an MRI of the lumbosacral plexus—nerves in the lower back—indicating Dr. Janssen was not limiting his treatment to the cervical spine area. Id. In the "medical decision-making" section of the note, Dr. Janssen stated plaintiff presented "for recheck . . . regarding his cervical spine." Id. at p. 2. Dr. Janssen then stated plaintiff was at MMI. Id. The statement does not specify if the MMI finding applies only to plaintiff's cervical spine injury. Lastly, Dr. Janssen recommended plaintiff see Dr. Wellman. Id. The record does not indicate whether plaintiff did so.

The record does not support plaintiff's objection that Dr. Janssen "was only treating for Plaintiff's cervical injuries." (Docket 43 at p. 3). Dr. Janssen also clearly placed plaintiff at MMI on August 23, contrary to plaintiff's assertion. The court overrules the objection.

The record is indeed ambiguous about the scope of Dr. Janssen's finding. The court cannot determine whether Dr. Janssen intended his MMI placement to pertain only to plaintiff's cervical injuries. However, the court finds this ambiguity is immaterial. As noted below, see infra Section IV.B, the court concludes that, even assuming Dr. Janssen's MMI finding applies only to

13

plaintiff's cervical pain, the record shows defendant's decision to terminate TTD benefits was reasonable.

**B.    Reasonableness of benefit termination**

Plaintiff's second objection argues the magistrate judge "held that an insurer's reliance on an IME report is *per se* reasonable," contrary to South Dakota law.    (Docket 43 at p. 7) (citing <u>Mordhorst v. Dakota Truck Underwriters & Risk Admin. Servs.</u>, 886 N.W.2d 322, 325 (S.D. 2016)).    Plaintiff, discounting Dr. Janssen's MMI finding, asserts the disagreement between Dr. Chicoine and Dr. Ripperda is sufficient to establish a jury question as to whether defendant's termination of benefits was reasonable.    <u>Id.</u> at pp. 7-10.    In response, defendant argues plaintiff cannot claim its termination decision was unreasonable because the DOL concluded it had the right to terminate the TTD benefits.    (Docket 45 at pp. 6-11).

Plaintiff mischaracterizes the R&R.    The magistrate judge did not conclude Dr. Ripperda's MMI opinion alone was sufficient to preclude a bad faith claim.    Instead, she found defendant did not act unreasonably in relying on Dr. Ripperda's and Dr. Janssen's opinions that plaintiff had reached MMI to terminate TTD benefits.    (Docket 40 at pp. 32-33).    In other words, she found plaintiff's claim for TTD benefits was fairly debatable.    <u>Id.</u> at p. 33.

The magistrate judge's conclusion was not error.    The question before the court is not whether a jury could believe Dr. Chicoine over Dr. Janssen and Dr. Ripperda.    Instead, the court asks if there is a genuine dispute of material fact

as to whether plaintiff had a fairly debatable claim to continuing TTD benefits.[10] If plaintiff's claim was fairly debatable, defendant was entitled to deny it without risking a bad faith suit.   Blanchard, 933 N.W.2d at 637.   In other words, plaintiff's bad faith claim survives summary judgment only if defendant had no reasonable basis to find plaintiff at MMI, terminate his TTD benefits and pay out his PPD benefits.   Hein, 731 N.W.2d at 236.   If the record shows no genuine dispute that a reasonable basis existed for the denial, defendant is entitled to summary judgment.

Plaintiff's claim was fairly debatable and defendant had a reasonable basis to deny it.   The record shows considerable dispute over the value of additional treatment following plaintiff's December 2016 fall.   While Dr. Chicoine believed plaintiff was not at MMI, he also acknowledged numerous referrals and treatments over the course of 2017 had failed to alleviate plaintiff's symptoms. His suggested course of action—referring plaintiff to an out-of-state medical center—was generalized, without an analysis of how plaintiff's pain might improve.   Meanwhile, Dr. Janssen and Dr. Ripperda both concluded there were

---

[10]Like all questions of fact, whether an insurer acted in bad faith can be determined on summary judgment.   Plaintiff's contrary argument is incorrect. South Dakota courts routinely resolve bad faith cases in summary judgment proceedings where appropriate.   See, e.g., Blanchard, 933 N.W.2d at 641; Mudlin, 742 N.W.2d at 54.

no further medical interventions to treat plaintiff's symptoms and placed him at MMI.[11]

Defendant was permitted to terminate plaintiff's TTD benefits when it became "apparent that permanent disability and the extent thereof ha[d] resulted from an injury and that the injured area will get no better or no worse because of the injury[.]" SDCL § 62-1-1(2). On the termination date, December 19, 2017, defendant could reasonably have concluded plaintiff's injuries had become permanent, with no possibility of further recovery. Dr. Janssen's and Dr. Ripperda's conclusions that further treatment was futile, coupled with Dr. Chicoine's failure to recommend specific evaluation or treatment options, amply support a finding that plaintiff had reached MMI. The court finds there is no genuine dispute that defendant had reasonable cause to terminate plaintiff's TTD benefits.

Plaintiff's primary contention appears to be that Dr. Chicoine's opinion should have been given controlling weight in defendant's MMI determination. He asserts defendant's failure to follow Dr. Chicoine's opinion constitutes bad faith. (Docket 43 at pp. 4-6). But resolving plaintiff's bad faith claim would not require the court or a jury to determine whether defendant correctly placed

---

[11]Even cabining Dr. Janssen's MMI opinion solely to plaintiff's cervical spine injury would not displace Dr. Chicoine's recognition that no treatment or evaluation had alleviated plaintiff's symptoms. It is clear plaintiff's treating physicians were at a loss for further possible treatments.

plaintiff at MMI.[12]   The question is whether defendant had a reasonable basis to

place plaintiff at MMI and terminate his TTD benefits.   A fact finder cannot

answer that question by merely assuming a primary treating physician is always

right.   In fact, the South Dakota Supreme Court rejected the inverse of that

principle.   See Mordhorst, 886 N.W.2d at 325 ("[A]n insurer's basis for denial is

not necessarily reasonable simply because the insurer relies on the opinion of a

medical practitioner.").   It follows that there is no basis in South Dakota law to

hold that an insurer reaching a conclusion contrary to a treating physician in a

workers' compensation case equates bad faith.

Plaintiff's other arguments are likewise unavailing.   He argues defendant

conducted an unreasonable investigation of his claim by failing to consult Dr.

Chicoine or seek "another opinion from another physician."   (Docket 43 at

p. 13).   But an unreasonable investigation cannot be the basis for a workers'

compensation bad faith claim in South Dakota.[13]   In "true first-party" bad faith

claims—where "the insurer has accepted a premium from its insured to provide

coverage"—bad faith "can extend to situations beyond mere denial of policy

---

[12]That job belonged to the DOL in the first instance, but the parties settled plaintiff's workers' compensation claim before the agency could determine whether plaintiff was properly placed at MMI.   Even if the DOL concluded defendant erred in placing plaintiff at MMI, that finding would not constitute *per se* evidence of bad faith.   Mudlin, 742 N.W.2d at 54.

[13]Plaintiff's reliance on Iowa bad faith cases is therefore unpersuasive. See Docket 43 at p. 12.   Whatever the state of the law in Iowa, South Dakota does not recognize a workers' compensation bad faith claim based on an unreasonable investigation.

benefits[,]" such as an unreasonable investigation.[14]  <u>Hein</u>, 731 N.W.2d at 236;

<u>see also</u> <u>Dakota, Minn. & E. R.R. Corp. v. Acuity</u>, 771 N.W.2d 623, 629 (S.D.

2009).    Workers' compensation bad faith claims, while derived from the

first-party context, differ in that the claimant has no contractual relationship

with the insurer.    <u>Id.</u>    Accordingly, the South Dakota Supreme Court limits

workers' compensation bad faith claims only to unreasonable claim denials.    <u>Id.</u>

at 237.    Plaintiff cannot substantiate his bad faith claim with evidence of an

unreasonable investigation.[15]

Plaintiff next argues a claim note shows internal disagreement as to

whether his TTD benefits should be terminated.    (Docket 43 at pp. 8-9).    The

claim note, created by Jessalyn Ericsson, memorializes a December 15, 2017,

conversation with Steve Deroo in which he states he is "not comfortable closing

TTD at this time given that primary [treating] physician keeps referring to other

doctors to see if further [treatment] can be offered."    (Docket 44-3).    The note on

its face associates Mr. Deroo with "Fischer Rounds."[16]    <u>Id.</u>    In his brief, plaintiff

---

[14]Plaintiff cites <u>Lead GHR Enters v. Am. States Ins. Co.</u> in support of his unreasonable investigation claim.    (Docket 43 at p. 9) (citing 369 F. Supp. 3d 909, 920 (D.S.D. 2019)).    <u>Lead GHR</u> was not a workers' compensation case. Instead, the parties were in a first-party, insured/insurer relationship, which permitted the plaintiff in that case to assert an unreasonable investigation bad faith claim.

[15]The court expresses no opinion as to whether defendant's investigation of plaintiff's claim—which included ordering an IME—was unreasonable.

[16]Fischer Rounds is a South Dakota insurance agency.    <u>See</u> History of Fischer Rounds & Associates, <u>available at</u> https://www.fischerrounds.com/ about-us/history (last accessed on March 19, 2020).

first asserts Mr. Deroo is an associate of Midwest Construction, his former employer, but then implies Mr. Deroo is an agent of defendant, all without citation to record materials. (Docket 43 at pp. 8-9).

Assuming Mr. Deroo is defendant's agent, his disagreement does not show defendant had no reasonable basis to place plaintiff at MMI. In fact, the claims note records Ms. Ericsson informing Mr. Deroo that the decision to terminate TTD benefits was made because Dr. Chicoine, the treating physician, was making "referral after referral," with no physician able to "say [plaintiff] is a surgical candidate etc." (Docket 44-3). This reflects the medical evidence supporting defendant's termination. The claims note does not generate a genuine dispute of material fact as to whether defendant had a reasonable basis to terminate plaintiff's TTD benefits.

Plaintiff lastly asserts defendant "relied on an IME opinion in the face of subsequent medical records indicating further treatment." (Docket 43 at p. 11). He likens defendant's alleged actions to a case where the Southern Division of this court found the insurer relied on an IME contradicted by medical records in its possession. Id. (citing Lewison v. W. Nat. Mut. Ins. Co., Civ. No. 13-4031, 2014 WL 3573403 at *6 (D.S.D. July 21, 2014)). Lewison was a first-party bad faith case where the plaintiffs alleged the insurer unreasonably investigated their claims to underinsured motorist coverage following a vehicle accident. Lewison, 2014 WL 3573403 at *4-5. The insurer, relying on an IME, denied one plaintiff's claims for a total knee replacement, asserting the accident did not cause the

injuries leading to the surgery.   Id. at *5-6.   The court, however, found the IME
was contradicted by medical records to which the insurer had access.   Id. at *6.
The court held it was not reasonable to "[d]eny[] a claim for reasons known to be
false," and denied summary judgment.   Id.

Plaintiff does not explain what portion of the IME is false and whether
defendant had access to information contradicting the allegedly false statement.
It is true that Dr. Chicoine continued to believe plaintiff had not reached MMI
after the IME was issued on September 11, 2017.   (Dockets 25-14 & 25-15).
But, as explained above, Dr. Chicoine's opinion was not controlling and
plaintiff's medical records contained sufficient information for defendant to
reasonably conclude he was at MMI as of December 19.   Defendant did not
knowingly rely on false information in concluding plaintiff had reached MMI and
terminating his TTD benefits.   Instead, defendant, relying on medical
information from plaintiff's other treating physicians and Dr. Ripperda,
reasonably concluded Dr. Chicoine was incorrect and that plaintiff had reached
MMI.   Whether defendant's conclusion was correct is not at issue; all that
matters is that the conclusion was reasonable.

The court concludes no genuine factual dispute exists as to the
reasonableness of defendant's actions under the circumstances of this case.
However, the court must reject defendant's argument that terminating TTD
benefits could never constitute bad faith as a matter of law because an insurer
has a statutory right to terminate TTD benefits.   (Docket 45 at p. 9).   As

recognized by the DOL in this case, an insurer is permitted by statute to terminate TTD benefits. (Docket 22-12 at pp. 2-4). Simply because an insurer has discretion to terminate TTD benefits does not mean it could never exercise that discretion in bad faith. If an insurer terminates TTD benefits with no reasonable basis and knows there is no reasonable basis for the termination, it has acted in bad faith. <u>Hein</u>, 731 N.W.2d at 236.

The magistrate judge did not err in concluding defendant had a reasonable basis to place plaintiff at MMI, terminate his TTD benefits and pay out his PPD benefits. The court grants summary judgment to defendant on plaintiff's bad faith claim. Plaintiff's objection is overruled.

### C. Rule 56(d) discovery and intentional infliction of emotional distress

In plaintiff's summary judgment brief, he asked the court to permit additional discovery under Federal Rule of Civil Procedure 56(d). (Docket 23 at p. 1). In an accompanying affidavit, plaintiff's counsel stated he received discovery materials three days after defendant filed its summary judgment motion. (Docket 25 at ¶ 1). Counsel further stated no depositions had been taken and affirmed his intent to depose defendant's employees who handled plaintiff's claim. <u>Id.</u> at ¶¶ 4-6. Counsel baldly asserted "additional discovery will develop Acuity's Claims Practices and is crucial to Plaintiff's lawsuit" and alleged "allowing the parties to complete discovery will defeat Defendant's Motion for Summary Judgment." <u>Id.</u> at ¶¶ 8-9. Plaintiff gave no further reasoning to

support his request for additional discovery.[17]   The magistrate judge rejected

plaintiff's request as factually insufficient.   (Docket 40 at pp. 44-46).

Plaintiff objects, arguing his request was sufficiently reasoned.   (Docket

43 at pp. 18-20).   He asserts Rule 56(d) does not require him to "guess as to

what the testimony will be" and says—for the first time—he would "inquire about

what attempts were made to reach out for the treating physician for an

explanation regarding his numerous medical records and letters to" defendant.

Id. at p. 19.   Plaintiff also states—again, for the first time—that deposing

defendant's employees "will reveal Acuity's malicious intent to deny Plaintiff's

benefits" and may "produce evidence that Acuity has an institutional pattern and

practice of similar behavior, which would constitute reckless disregard for the

---

[17]Plaintiff's position on additional discovery has been inconsistent.   After
requesting Rule 56(d) discovery, plaintiff moved to stay all discovery pending
resolution of the summary judgment motion.   (Docket 29).   He later withdrew
that motion.   (Docket 30).   Finally, the parties jointly "agree[d] to stay
discovery" until the court ruled only on the estoppel issues defendant raised in
its summary judgment motion.   (Docket 32).   By e-mail, the parties stated they
actually intended the court to resolve all issues presented in the summary
judgment briefing.   The court stayed discovery and informed the parties by
e-mail it would rule on all presented issues.   (Docket 33).   Although plaintiff's
conduct does not factor into the court's ruling on his request for Rule 56(d)
discovery, the court cannot explain why plaintiff would request additional
discovery but then consent to staying discovery in full.   Nor can the court
explain why plaintiff requested discovery but proceeded to contest defendant's
summary judgment motion on the merits.

rights of Plaintiff and other injured workers."[18]  (Docket 43 at p. 14).   In

plaintiff's view, "[i]nstitutional and systematic bad faith rises to the requisite

level of outrageous conduct to support [his] claim for intentional inflection of

emotional distress."  <u>Id.</u>

Rule 56(d) allows a court to defer resolving a summary judgment motion

when "a nonmovant shows by affidavit or declaration that, for specified reasons,

it cannot present facts essential to justify its opposition[.]"  Fed. R. Civ. P. 56(d).

A Rule 56(d) affidavit "must set forth specific facts further discovery might

uncover, or what information further discovery might reveal."  <u>Hamilton v.

Bangs, McCullen, Butler, Foye & Simmons, L.L.P.</u>, 687 F.3d 1045, 1050 (8th Cir.

2012) (internal quotation omitted).   "It is not enough to present a list of facts

sought to be discovered.   The nonmovant must articulate how those facts are

relevant to rebut the movant's showing of the absence of a genuine issue of fact."

<u>In re Mirapex Products Liability Litigation</u>, 912 F.3d 1129, 1135 (8th Cir. 2019)

(internal quotation omitted).   The court "has wide discretion in considering a

Rule 56(d) motion."  <u>GEICO Cas. Co. v. Isaacson</u>, 932 F.3d 721, 726 (8th Cir.

2019) (internal quotation omitted).

---

[18]Because a Rule 56(d) motion is not dispositive, the court arguably should
review the magistrate judge's rejection under a standard more deferential than
de novo.  <u>See</u> Fed. R. Civ. P. 72(a) (requiring district court to review
non-dispositive magistrate orders for clear error).   Under that standard, the
court could find no clear error in the magistrate judge failing to consider facts not
presented to her.  <u>See</u> <u>also</u> <u>Ridenour v. Boehringer Ingelheim Pharms., Inc.</u>, 679
F.3d 1062, 1067 (8th Cir. 2012) (A party is "required to present all of his
arguments to the magistrate judge, lest they be waived.").   However, plaintiff's
new arguments fail on de novo review, so the court need not consider whether
they are waived.

The court concluded above that defendant was entitled to summary judgment on plaintiff's bad faith claim because medical records showed defendant had a reasonable basis to terminate plaintiff's TTD benefits.   <u>See</u> <u>supra</u> Section IV.B.   Plaintiff does not seek any discovery that would affect the court's decision.   Plaintiff does not ask to depose Dr. Chicoine, Dr. Janssen or Dr. Ripperda concerning their respective MMI opinions.   He does state he would ask defendant's employees why they did not contact Dr. Chicoine.   (Docket 43 at p. 19).   But no answer to that question would alter the court's basic calculus: the medical records show more than enough evidence from which defendant could reasonably conclude plaintiff was at MMI.   It does not matter why or whether defendant contacted Dr. Chicoine.   Defendant already had access to his medical records and letters when it terminated plaintiff's TTD benefits.   The court nevertheless found the termination reasonable.   Rule 56(d) discovery on this matter would be futile because it would not establish a genuine issue of fact.[19]   <u>In re Mirapex</u>, 912 F.3d at 1135.

Plaintiff also asserts further discovery could uncover defendant's "malicious intent" to deny not only his benefits but also an "institutional pattern and practice of similar behavior[.]"   (Docker 43 at p. 14).   This is nothing more than speculation.   Plaintiff provides no reason for the court to conclude

---

[19]Plaintiff cited two cases in support of the proposition that Rule 56(d) discovery is warranted "where the treating physician and the [IME] opinion have conflicted."   (Docket 43 at pp. 19-20) (citing <u>McGahey v. Harvard Univ. Flexible Benefits Plan</u>, 685 F. Supp. 2d 168 (D. Mass. 2009); <u>Gowan v. Mid Century Ins. Co.</u>, 309 F.R.D. 503 (D.S.D. 2015)).   Neither case addresses Rule 56(d) or has any application to plaintiff's motion.

defendant's employees would disclose a pattern of maliciously denying workers' compensation claims.   Even if such a pattern would emerge through discovery, plaintiff has not shown it would be relevant.   The record in this case is completely devoid of any malicious behavior in defendant's handling of plaintiff's claim.[20]   Rule 56(d) discovery would be futile.

In his objections, plaintiff only argued summary judgment on his intentional infliction of emotional distress claim was premature due to lack of discovery.   (Docket 43 at pp. 13-14).   He did not object to the magistrate judge's legal reasoning.   The court adopts the R&R in full on the claim. Summary judgment in favor of defendant is granted.   Plaintiff's objection to the magistrate judge's denial of his motion for Rule 56(d) discovery is overruled.

## D.    Conversion

The magistrate judge recommended granting summary judgment to defendant on plaintiff's conversion claim.   (Docket 40 at pp. 36-39).   Plaintiff agrees his conversion claim is dependent on his bad faith claim.   (Docket 43 at p. 14).   Because plaintiff's bad faith claim does not survive summary judgment, neither does his conversion claim.   Summary judgment is granted to defendant.

Like the magistrate judge, the court finds it difficult to envision a successful conversion claim based on an insurance company refusing to pay

---

[20]Denial of benefits, standing alone, is insufficient to raise an inference of malice.   The record shows a genuine dispute among plaintiff's treating physicians regarding his MMI status and agreement that there were few, if any, treatment options.   Under these circumstances, placing plaintiff at MMI and terminating TTD benefits is hardly malicious.

properly disputed workers' compensation benefits.[21]   (Docket 40 at p. 37).

"Conversion is the unauthorized exercise of control or dominion over personal property in a way that repudiates an owner's right in the property or in a manner inconsistent with such right."   First Am. Bank & Trust, N.A. v. Farmers State Bank of Canton, 756 N.W.2d 19, 31 (S.D. 2008) (internal quotation omitted). Even assuming disputed workers' compensation benefits are "personal property," an insurer disputing whether benefits are owed is not exercising "*unauthorized* . . . control or dominion" over the benefits.   Id. (emphasis added).

Plaintiff further relies on a case from the Southern Division of this court in which the court analogized wrongful failure to pay policy benefits to conversion in an attorney's fee dispute.   (Docket 43 at pp. 15-16) (citing Hurley v. State Farm Mut. Auto. Ins. Co., No. Civ. 10-4165, 2012 WL 6012803 at *4 n.3 (D.S.D. Dec. 3, 2012)).   The court previously rejected attempts to construe the court's dicta in Hurley into support for a conversion claim in bad faith cases.   Lead GHR, 369 F. Supp. 3d at 928.   If an insurer withholds debatable workers' compensation benefits, the remedy is an administrative action through the DOL or, if the withholding is tortious, through a bad faith suit.

---

[21]The court's recent decision in Hayes v. Acuity is not to the contrary. Civ. 17-5015, 2020 WL 1322269 (D.S.D. Mar. 20, 2020).   In Hayes, the court denied summary judgment on a conversion claim in a workers' compensation bad faith case.   Id. at *12.   The court noted a South Dakota statute made the insurer's duty to pay "not fairly debatable."   Id. at *9 (quoting Bertelsen v. Allstate Ins. Co., 833 N.W.2d 545, 563 (S.D. 2013).   In that circumstance, the plaintiff "had a possessory interest in the continuation of . . . benefits."   Id. at *12.   However, where no clearly established law places a plaintiff's right to workers' compensation benefits beyond debate, a conversion claim against the insurer will be difficult to establish.

### E. Unfair and deceptive trade practices

The magistrate judge, citing a statute barring a private right of action, summarily dismissed plaintiff's unfair and deceptive insurance practices claim, brought under SDCL § 58-33-67.   (Docket 40 at pp. 39-40) (citing SDCL § 58-33-69).   Plaintiff concedes the statute does not contain a private right of action, but asserts it is "relevant" to his bad faith claim "regarding failure to investigate."   (Docket 43 at pp. 16-17).   He cites a case from this court's Southern Division in which the court recognized a violation of South Dakota's Unfair Trade Practices Act could form the basis for an attorney's fee's claim. Wiebers v. Farmers Mut. Hail Ins. Co. of Iowa, 4:17-CV-04126, 2019 WL 6769546 at *10 (D.S.D. Dec. 12, 2019) (citing W. Nat. Mut. Ins. Co. v. TSP, Inc., 904 N.W.2d 52, 60 (S.D. 2017)).

In Wiebers, the court, citing district precedent, held § 58-33-67 does not provide a private right of action.   Id. (citing Anderson v. W. Nat. Mut. Ins. Co., 857 F. Supp. 2d 896, 908 (D.S.D. 2012)).   However, the South Dakota Supreme Court's decision in TSP, Inc. acknowledges conflict between the statute disclaiming a private right of action for unfair and deceptive insurance practices and a separate statute, SDCL § 58-33-46.1, which seemingly provides a private right of action.   TSP, Inc., 904 N.W.2d at 60.   The South Dakota Supreme Court had no occasion to resolve this conflict, instead holding only that attorney's fees were available for unfair and deceptive insurance practices.   Id.

Setting this legal dilemma aside, plaintiff does not object to the magistrate judge's holding that no private right of action exists. Instead, he asserts his unfair insurance practices claim bears on his bad faith claim "regarding failure to investigate." (Docket 43 at pp. 16-17). An insurer cannot be held liable in a workers' compensation bad faith case for an unreasonable investigation. See supra Section IV.B. Defendant's alleged unfair insurance practices are not relevant to plaintiff's bad faith claim. Plaintiff's objection is overruled and summary judgment is granted to defendant.

**F.    Attorney's fees**

In his complaint, plaintiff requested attorney's fees under SDCL § 58-12-3.[22] (Docket 1 at ¶ 67). That statute allows the recovery of attorney's fees if an insurer "has refused to pay the full amount of such loss, and that such refusal is vexatious or without reasonable cause[.]" SDCL § 58-12-3. The magistrate judge found defendant's conduct was not vexatious or unreasonable. (Docket 40 at pp. 40-43). She concluded defendant did not force plaintiff to initiate litigation and properly terminated plaintiff's TTD benefits in accordance with South Dakota law. Id. at pp. 41-43. Plaintiff objects, arguing the

---

[22]Plaintiff also requested attorney's fees under SDCL § 58-33-46.1, which relates to unfair insurance practices. (Docket 1 at ¶ 66). He did not pursue this claim in his summary judgment brief or otherwise raise it before the magistrate judge, nor did he object on this basis. Instead, as noted above, see supra Section IV.E, plaintiff argued § 58-33-46.1 related to his bad faith claim. The court concludes plaintiff waived an attorney's fees claim based on § 58-33-46.1. Ridenour, 679 F.3d at 1067.

litigation start date is irrelevant and defendant's TTD termination could not be based on Dr. Janssen's opinion.   (Docket 43 at pp. 17-18).

"Before a trial court can award attorney's fees under [§ 58-12-3] it must find that the insurance company refused to pay the full amount of the insured's loss and that said refusal was either vexatious or without reasonable cause." Brooks v. Milbank Ins. Co., 605 N.W.2d 173, 178 (S.D. 2000).   "[Section] 58-12-3 permits a court to award attorney's fees . . . only 'if judgment or an award is rendered for plaintiff.' "   TSP, Inc., 904 N.W.2d at 60 (quoting SDCL § 58-12-3).   "[I]f there is a bona fide and reasonable factual ground for contesting the insured's claim, there is no [vexatious] failure to pay." Howie v. Pennington Cty., 563 N.W.2d 116, 119 (S.D. 1997) (internal quotation omitted). Nevertheless, the failure of a bad faith claim "does not, as a matter of law, preclude a trial court from awarding attorney's fees under § 58-12-3." Tripp v. W. Nat. Mut. Ins. Co., 664 F.3d 1200, 1206 (8th Cir. 2011).   Plaintiff, as the party seeking attorney's fees, has the burden to prove his entitlement.   TSP, Inc., 904 N.W.2d at 60.

Neither the DOL nor this court rendered a judgment or award in favor of plaintiff at any stage of this litigation.[23]   The parties settled plaintiff's workers' compensation claim before the DOL could adjudicate it.   The court makes no

_____

[23]The requirement that plaintiffs prevail before attorney's fees may be awarded appears to refer to the underlying insurance litigation, not to a subsequent bad faith claim.   See Tripp, 664 F.3d at 1205-07 (concluding "statutory fee award[s] d[o] not hinge on the outcome of [a] bad faith claim."). The court thus considers whether plaintiff obtained a judgment or award on his workers' compensation claim.

finding that plaintiff prevailed on the merits of his workers' compensation claim. Without a judgment or award in his favor on the merits of the claim, plaintiff is not entitled to attorney's fees under § 58-12-3. The court need not determine whether defendant's TTD benefit termination "refused to pay the full amount of [plaintiff's] loss" or was "vexatious or without reasonable cause[.]" SDCL § 58-12-3. Plaintiff's objection is overruled and the R&R is adopted as modified by this order. Summary judgment is granted to defendant on plaintiff's attorney's fees claim.

### G. Punitive damages

The magistrate judge recommended summary judgment be granted to defendant on plaintiff's punitive damages claim. (Docket 40 at pp. 43-44). She noted South Dakota law ties a punitive damages request to the underlying substantive claim. Id. Plaintiff agrees. (Docket 43 at p. 18). Because the court dismisses plaintiff's bad faith claim, it must also dismiss his punitive damages claim. Summary judgment is granted to defendant.

## ORDER

For the above reasons, it is

ORDERED that plaintiff's objections to the report and recommendation (Docket 43) are overruled.

IT IS FURTHER ORDERED that the report and recommendation (Docket 40) is adopted as modified by this order.

IT IS FURTHER ORDERED that defendant's motion for summary judgment (Docket 18) is granted in full.

Dated March 25, 2020.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE